# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------X

RANDY R. BELL

Plaintiff,

--against--

THE NEW YORK STATE DEPARTMENT OF CORRECTIONS
AND COMMUNITY SUPERVISION, individually as a state agency,
in its official capacity and as a co-conspirator, THE NEW YORK
STATE CORRECTIONAL OFFICERS AND POLICE BENEVOLENT
ASSOCIATION INC., individually, in its official capacity and as a
co-conspirator, ANTHONY ANNUCCI, individually, in his official
capacity and as a co-conspirator, MIKE POWERS, individually, in his
official capacity and as a co-conspirator, GREG FREDERIKS,
individually, in his official capacity and as a co-conspirator, JIM BLEU,
individually, in his official capacity and as a co-conspirator, TERRY
PIKE, individually, in his official capacity and as a co-conspirator,
KEVIN ALDOUS, individually, in his official capacity and as
a co-conspirator, MICHAEL CALDWELL, individually, in his official
capacity and as a co-conspirator, CALVIN RABSATT, individually, in
his official capacity and as a co-conspirator, BRIAN MCAULIFFE,
individually, in his official capacity and as a co-conspirator, MIKE
SOVIE, individually, in his official capacity and as a co-conspirator,
MICHELE O'GORMAN, individually, in her official capacity and as
a co-conspirator, JAMES BELL, individually, in his official capacity
and as a co-conspirator, SCOTT CLARY, individually, in his official
capacity and as a co-conspirator, STEVE GARABRANDT, individually,
in his official capacity and as a co-conspirator, TONY HARPER,
individually, in his official capacity and as a co-conspirator, CARL
HEWKO, individually, in his official capacity and as a co-conspirator,
TOM PATNODE, individually, in his official capacity and as a
co-conspirator, PATRICK GRAY, individually, in his official capacity
and as a co-conspirator.

Defendants

-----------------------------------------------------------------------X

Case No.: 1:17-CV-937

## COMPLAINT

DNH / CFH



U.S. DISTRICT COURT - N.D. OF N.Y.
FILED
AUG 2 4 2017
AT_____ O'CLOCK_____
Lawrence K. Baerman, Clerk - Syracuse

## JURY TRIAL DEMANDED

Plaintiff Randy R. Bell herein referred to as "Plaintiff", as and for his Complaint,

respectfully alleges as follows:

## Introduction

1.      This claim is a result of the unfair distribution of overtime hiring of New York State Correctional Officers at the Riverview Correctional Facility in Ogdensburg NY. The Plaintiff, a Corrections Officer, since the start of his employment at Riverview Correctional Facility in 2010, observed and learned that the overtime hiring at the Facility was riddled with corruption most notably theft of overtime hours (money). The Facility Management and Union Representatives were grossly negligent in their duties and responsibilities to ensure that overtime hours were equally distributed among the Correctional Officers, to include the Plaintiff. The corruption within the overtime hiring system, at the Riverview Facility amounts to unlawful theft of large amounts of money by certain Correctional Officers, from other Correctional Officers, enabled by particular Correctional Sergeants responsible for hiring such overtime.  The Plaintiff in 2013, because he wanted to work in a fair, equitable and lawful overtime hiring system, introduced and proposed a just and transparent hiring system to the 235 Correctional Officers of the Riverview Facility.  This overtime hiring proposal passed two local union meeting "hand votes" and a "formal facility wide, union conducted, secret ballot vote". This proposed system is used in many other Facilities across New York State including the Plaintiff's previous place of employment, Clinton Correctional Facility, the largest Correctional Facility in NY State. The Riverview Management, Union Representatives and corrupt officers then both individually and together, from that point on, conspired to delay and stop the proposal from ever being implemented. This "fully approved by all parties proposal", now a Labor Management Agreement, 10 days after it was received by local staff, was wrongly voted down with a "hand vote" 23 to 5 at a single local union meeting.  Most of the 23 union members that voted it down were members who unfairly gain overtime hours under the current overtime hiring system, along

with those who wanted revenge on the Plaintiff for rightfully accusing them of neglecting their duties. This Labor Management Agreement, if implemented, would have stopped the theft or larceny being committed by these corrupt union members/Corrections Officers and would not have negatively impacted them or the Facility in any way.

2.     An important factor of unfair distribution of overtime hours at Riverview Correctional Facility is that preferential overtime job assignments are sometimes given to or saved for, more "preferred" Officers, which violates the contract and deters Riverview Correctional Officers from working overtime as they are not treated fairly.

3.     Another important factor in the overtime hiring corruption at Riverview Correctional Facility are the constant threats made towards NYSCOPBA union members, by Corrections Sergeants of the same NYSCOPBA union, in the pre-shift briefing room, who state that "if any officer goes above our heads, that these officers will be retaliated against", which suppresses any complaints from staff, including complaints about unfair overtime distributions and overtime job assignments.

4.     The Plaintiff has requested assistance from several different agencies, including agencies responsible for such corruption, and they all informed him that they could not help or simply ignored him or refused his request for assistance. Since the Plaintiff began his effort to implement a fair overtime hiring system, in 2013 to this present date, he has endured constant harassment, taunting, degradation and even life threatening actions against him by the Defendants and unknown others, to deny the Plaintiff of his union rights, contract rights, civil rights and lawful rights to the point of attempted assault, theft and extortion as defined in New York Penal Law 155.05.

3

5.     The Defendants fully intend to keep the current overtime hiring system in place for their own personal benefits or motives, which harbors, manipulates and actually motivates theft by NY State Corrections Officers, the same Corrections Officers who are responsible to guard convicted felons, some of whom, have also committed the same.

6.     The Plaintiff will provide substantial documentary evidence and witness testimony after records and information are fully disclosed and delivered to him by the Defendants to fully prove his allegations are true beyond any doubt.

## JURISDICTION AND VENUE

7.     This court has jurisdiction pursuant to 28 U.S.C. 1331 because this is a civil action arising under laws of the United States, in particular, 42 U.S.C. 1983 and 42 USC 1985 and the United States Constitution.

8.     This court has jurisdiction over Plaintiff's state laws claims pursuant to the doctrine of supplemental jurisdiction under 28 U.S.C. 1367.

9.     Venue is proper in this District pursuant to 28 U.S.C. 1391 because a substantial part of the events giving rise to the Plaintiff's claim occurred in this District.

## PARTIES

10.    Plaintiff:    Randy R. Bell
       Address:     5668 Eloise Cr.
                    P.O. Box 584
                    Osgoode, Ontario, Canada
                    K0A 2W0

11. a. Defendant: The New York State Department of Corrections and
                  Community Supervision (NYSDOCCS)
       Official Position: New York State Corrections
       Address: The Harriman State Campus Building 2,
                1220 Washington Ave.,
                Albany, New York, 12226-2050

12. b. Defendant: The New York State Correctional Officers and
                  Police Benevolent Association Inc. (NYSCOPBA)
       Official Position: Correctional Officers union
       Address: 102 Hackett Blvd.,
                Albany, New York, 12209

13. c. Defendant: Anthony Annucci
       Official Position: Acting Commissioner of New York State
                          Corrections and Community Supervision
       Address: 313 Lowdell Mill Road
                Westerlo, New York, 12193

14. d. Defendant: Mike Powers
       Official Position: Former RCF Corrections Sergeant and present
                          NYSCOPBA Executive President
       Address: 625 Elizabeth St.
                Ogdensburg, New York, 13669

15. e. Defendant: Greg Fredericks
       Official Position: RCF Corrections Officer and local NYSCOPBA
                          Union President (retired)
       Address: 59 County Route 4
                Ogdensburg, New York, 13669

16. f. Defendant: Jim Bleu
       Official Position: RCF Corrections Officer and local NYSCOPBA
                          Union President (resigned)
       Address: 9281 State Highway 37
                Ogdensburg, New York, 13669

17.  g.  Defendant:  Terry Pike
         Official Position:  RCF Corrections Officer and local NYSCOPBA Union President (resigned)
         Address:  4404 County Route 14
                   Madrid, New York, 13660

18.  h.  Defendant:  Kevin Aldous
         Official Position:  RCF Corrections Officer and local NYSCOPBA Union President (current)
         Address:  1694 State Highway 68
                   Canton, New York, 13617

19.  i.  Defendant:  Michael Caldwell
         Official Position:  RCF Deputy Superintendent of Security
         Address:  1110 Tibbitts Drive,
                   Ogdensburg, New York, 13669

20.  j.  Defendant:  Calvin Rabsatt
         Official Position:  Superintendent of RCF (retired)
         Address:  106 St. Lawrence Ave.,
                   Waddington, New York, 13694

21.  k.  Defendant:  Brian McAuliffe
         Official Position:  Current Superintendent of RCF
         Address:  1110 Tibbitts Drive,
                   Ogdensburg, New York, 13669

22.  l.  Defendant:  Mike Sovie
         Official Position:  RCF Corrections Sergeant and NYSCOPBA union member
         Address:  184 Nelson Rd,
                   Ogdensburg, New York, 13669

23. m. Defendant: Michele O'Gorman
Official Position: New York State Labor Relations Deputy Director
Address: 1220 Washington Ave.,
State Campus Building 2,
Albany, New York, 12226-2050

24. n. Defendant: James Bell
Official Position: RCF Corrections Officers and local NYSCOPBA
union representative
Address: 610 Jay St.
Ogdensburg, New York, 13669

25. o. Defendant: Scott Clary
Official Position: Former RCF Corrections Sergeant and current
Corrections Lieutenant
Address: 11 Erwin Ave.
Massena, New York, 13662

26. p. Defendant: Steve Garabrandt
Official Position: RCF Corrections Sergeant and local NYSCOPBA
union representative for the Sergeants
Address: 12 Wells Street,
Canton, New York, 13617

27. q. Defendant: Tony Harper
Official Position: RCF Corrections Officers and NYSCOPBA union
member
Address: 414 Canton St.
Ogdensburg, New York, 13669

28. r. Defendant: Carl Hewko
Official Position: RCF Corrections Officers and NYSCOPBA union
member
Address: 508 Morris St.
Ogdensburg, New York, 13669

29.  s.  Defendant:        Tom Patnode
         Official Position:  RCF Corrections Sergeant and NYSCOPBA union member
         Address:          28 Irish Settlement Rd.
                           Heuvelton, New York, 13654

30.  t.  Defendant:        Patrick Gray
         Official Position:  RCF Corrections Officers and NYSCOPBA union member
         Address:          6953 County Route 10
                           Lisbon, New York, 13658

## STATEMENT OF FACTS

31.    The Defendants' actions and inactions stated in this claim are of substantial public concern as it involves the distribution of several million dollars of taxpayer funded money.

32.    The Plaintiff is a United States Citizen.

33.    Riverview Correctional Facility, herein referred to as RCF, is a New York State Correctional Facility located at 1110 Tibbitts Drive, Ogdensburg NY, 13669 and is the subject of this complaint.

34.    RCF houses approximately 700 felons, convicted of serious crimes, up to and including murder.

35.    New York State Department of Corrections and Community Supervision was formerly called New York State Department of Corrections, herein referred to as DOCCS.

36.    DOCCS is an agency of New York State.

8

37. DOCCS is responsible for incarcerating approximately 54,000 convicted felons, housed in approximately 54 facilities throughout New York State.

38. New York State, herein after referred to as NYS, Correctional Officers are employed by DOCCS and are responsible for the care, custody and control of incarcerated inmates within the DOCCS.

39. NYS Correctional Officers rankings consist of: 1) Correctional Officers (the lowest security staff ranking), 2) Corrections Sergeants, 3) Corrections Lieutenants, 4) Corrections Captains, 5) Deputy Superintendent and 6) Superintendent (the highest security staff ranking).

40. The Plaintiff is a NYS Corrections Officer who works at RCF.

41. The Plaintiff is qualified to work any Correctional Officer job assignment at RCF.

42. The Plaintiff has been employed by NYS, as a Corrections Officer, since August 8th 1988 and has been employed at RCF as a Corrections Officer since, on or about, July 19th 2010.

43. NYS Corrections Officers, including the Plaintiff and NYS Corrections Sergeants are represented by the same Labor Union: the New York State Correctional Officers and Police Benevolent Association Inc., herein after referred to as NYSCOPBA.

44. The Plaintiff pays union dues to NYSCOPBA to represent and defend him in employment related matters at RCF.

45. Corrections Lieutenants are represented by Labor Union Counsel 82 NYS Law Enforcements Union AFSCME, AFL-CIO.

46.    Corrections Captains, Corrections Deputy Superintendents positions and the Superintendent of RCF are considered Management.

47.    There are approximately 235 Corrections Officers and approximately 15 Corrections Sergeants that work at RCF and who all are NYSCOPBA union members.

48.    There are approximately 23,000 NYS Correctional Officers who work in NYS, with some working under the same overtime hiring system as RCF and others hire overtime using the same system that the Plaintiff has proposed at RCF.

49.    As referred to in the entirety of this complaint, RCF Correctional Officer overtime hours also means, and includes, the Plaintiff's overtime hours.

50.    At this time this is not a Class Action Claim, but is an individual claim by the Plaintiff, Randy Bell.

## The Contract

51.    NYS entered into an agreement/contract, herein referred to as the contract, with NYSCOPBA from April 1st 2009 to March 31st of 2016.

52.    The contract entered into by NYS and NYSCOPBA from April 1st 2009 to March 31st 2016 is still in effect until a successor agreement is reached and as is required by law.

## Breach of Contract by NYS

53.    NYS had a duty to ensure that Correctional Officer overtime hours, at RCF were equally distributed pursuant to section 15.1(a) of the contract.

54.    Correctional Officer overtime hours have not been equally distributed at RCF from, on or about July 19th 2010, when the Plaintiff started working at RCF, to the filing date of this claim.

55.    DOCCS has neglected to ensure that RCF Correctional Officers overtime hours are distributed equally at RCF from, on or about, July 19th 2010, when the Plaintiff started working at RCF, to the filing date of this claim.

56.    DOCCS by neglecting to ensure that RCF Correctional Officer overtime hours at RCF were equally distributed, since on or about July 19th 2010, when the Plaintiff arrived at RCF, to the filing date of this claim, violates section 15.1(a) of the contract (equitable distribution of overtime hours among employees) which denies the Plaintiff his union rights and contractual rights.

57.    The violation of section 15.1(a) of the contract is an ongoing violation.

58.    As a direct result of 1 through 57 of this complaint, the Plaintiff has lost $196.000.00 (500 hours per year x $56.00 per overtime hour x 7 years = $196,000.00) in biweekly payroll check overtime money payments, from on or about July 19th 2010, when the Plaintiff arrived at RCF, to July 19th 2017 and ongoing losses to be determined, due to the inequitable distribution of overtime hours at RCF, as he did not want to get involved in the contract breaching, unfair, unlawful and corrupt overtime hiring system that exist at RCF.

59.    The Plaintiff is a member of the NYS and Local Retirement System.

11

60.   Plaintiff's final average salary is used to calculate the Plaintiff's retirement income pursuant to NYS Civil Service Law 134 (3) and article 14 of the NYS and Local Retirement System.

61.   Plaintiff currently earns $56.00 per hour in overtime.

62.   The Plaintiff, now 53 years old, has a life expectancy of 82.5 years according to the United States Social Security Administration, which results in 29.5 years of expected retirement income (82.5 minus 53 = 29.5 years).

63.   As a result of 1 through 62 of this complaint, Plaintiff lost $413,000.00 (500 hours of overtime per year x $56.00 per overtime hour = $28,000.00 x 29.5 years of Plaintiff's life expectancy =$826,000.00 divided by 2, (½ of final average pay per article 14 of the NYS and Local Retirement System) = $413,000.00) of future Retirement Income Money.

64.   DOCCS, by neglecting their duties to ensure equal distribution of overtime hours at RCF, as described in 1 through 63 of this complaint, have caused the Plaintiff to suffer a total biweekly payroll check and future retirement income loss of $609,000.00, in addition to the Plaintiff being a victim of NY Penal law 155.25, 155.30 and 155.35 as described in 155.05 of that law and as a result caused the Plaintiff much stress and mental anguish, all of which denied the Plaintiff his union rights, contract rights and lawful rights.

### Breach of Contract by NYSCOPBA

65.   NYSCOPBA had a duty to ensure that RCF Correctional Officer overtime hours were equally distributed at RCF from on or about July 19th, 2010 to the filing date of this claim, pursuant to section 15.1(a) of the contract.

66.    RCF Correctional Officer overtime hours were not equally distributed at RCF from on or about July 19th, 2010, to the filing date of this claim.

67.    NYSCOPBA neglected to ensure that Correctional Officer overtime hours were equally distributed at RCF from on or about July 19th, 2010, to the filing date of this claim.

68.    As a direct result of NYSCOPBA neglecting their duties to ensure that RCF Correctional Officer overtime hours were equally distributed, the Plaintiff has lost $609,000.00 in biweekly payroll check income and future retirement income as described in 1 through 67 of this complaint which caused the Plaintiff great stress and mental anguish, all of which denied the Plaintiff his union rights, contract rights and lawful rights.

**Breach of Contract by DOCCS Acting Corrections Commissioner Anthony Annucci**

69.    DOCCS acting Commissioner Anthony Annucci had a duty to ensure that RCF Correctional Officer overtime hours were equally distributed at RCF from on or about July 19th, 2010, when the plaintiff arrived at RCF to work, to the filing date of this complaint, pursuant to section 15.1(a) of the contract.

70.    RCF Correctional Officer overtime hours were not equally distributed at RCF from on or about July 19th, 2010 to the filing date of this claim.

71.    DOCCS acting Commissioner Anthony Annucci neglected to ensure that Correctional Officer overtime hours were equally distributed at RCF from on or about July 19th, 2010 to the filing date of this claim.

72.    As a direct result of DOCCS acting Commissioner Anthony Annucci neglecting his duties to ensure that RCF Correctional Officer overtime hours were equally distributed at

RCF, the Plaintiff has lost $609,000.00 in biweekly payroll check income and future retirement income as described in 1 through 72 of this complaint, which caused the Plaintiff great stress and mental anguish, all of which denied the Plaintiff his union rights, contract rights and lawful rights.

### Breach of Contract by NYSCOPBA Executive Union President Mike Powers

73.    NYSCOPBA Executive Union President Mike Powers had a duty to ensure that RCF Correctional Officer overtime hours were equally distributed at RCF from on or about July 19th, 2010, to the filing date of this claim pursuant to section 15.1(a) of the contract.

74.    RCF Correctional Officer overtime hour were not equally distributed at RCF from on or about July 19th, 2010, to the filing date of this claim.

75.    NYSCOPBA Executive Union President Mike Powers neglected to ensure that Correctional Officer overtime hours were equally distributed at RCF from on or about July 19th, 2010, to the filing date of this claim.

76.    As a direct result of NYSCOPBA Executive Union President Mike Powers neglecting his duties to ensure that RCF Correctional Officer overtime hours were equally distributed at RCF, the Plaintiff has lost $609,000.00 in biweekly payroll check income and future retirement income as described in 1 through 75 of this complaint, which caused the Plaintiff great stress and mental anguish, all of which denied the Plaintiff his union rights, contract rights and lawful rights.

## Unhealthy Work Environment

77.     Acting Corrections Commissioner Anthony Annucci, NYSCOPBA Executive Union President Mike Powers, RCF Management and local RCF NYSCOPBA union representatives had a duty to ensure a healthy working environment for the Plaintiff and to respond to unhealthy work related issues, like the unfair distribution of overtime hours at RCF, pursuant to section 22.1 of the contract.

78.     RCF, as in all correctional environments, is a place of employment where Corrections Officers, to include this Plaintiff, are exposed to confrontations, violence and constant negative conflicts within the Facility which all creates an environment that negatively affects Correctional Officers both mentally and physically.

79.     After being assigned to RCF on or about July 19th, 2010, to the filing date of this claim, Plaintiff observed and was exposed to numerous, and sometimes intense, daily conflicts and negative discussions inside the Facility regarding the unfair distribution of overtime hours.

80.     Acting Corrections Commissioner Anthony Annucci, NYSCOPBA Executive Union President Mike Powers, RCF Management and local RCF NYSCOPBA union representatives neglected to ensure that a healthy working environment existed, above and beyond the typical detrimental working environment at RCF, because of the constant conflicts taking place relating to the unfair distribution of overtime hours pursuant to section 22.1 of the contract (memorandum of understanding).

81.     Acting Corrections Commissioner Anthony Annucci, NYSCOPBA Executive Union President Mike Powers, RCF Management and local RCF NYSCOPBA union representatives, by neglecting their duty to ensure that a healthy work environment existed at

15

RCF, which in turn, exposed the Plaintiff to the conflicts relating to unfair overtime hiring at RCF violated section 22.1 of the contract causing the Plaintiff to suffer great stress and mental anguish as he too wanted to work overtime hours to benefit himself, his family and to increase his final average salary for retirement purposes and which denied the Plaintiff his union rights and contract rights.

### Inhibiting Relationship between RCF Management and RCF Union Representative

82.     It was learned by the Plaintiff, in late 2010, that the RCF local NYSCOPBA Union President/Chief Stewart, herein after referred to as the President, Greg Fredericks at that time was, according to him and other union members, good friends of then RCF Deputy Superintendent Mike Caldwell and as such seemed to impede proper representation of the union membership, to include this Plaintiff, and was a direct factor in the unfair distribution of overtime hours at RCF.

83.     Shortly after arriving at RCF, the Plaintiff was having a discussion with the local Union President Greg Fredricks regarding an issue a union member was having, when the Plaintiff suggested to Mr. Fredricks to simply file a grievance, Mr. Fredricks then stated to the Plaintiff, in a stern manner "there will be no grievances filed"; indicating to the Plaintiff that union representation at RCF was deficient.

84.     It was additionally learned by the Plaintiff that Officers were being denied their entitled overtime hours, as a result of "numerous" dishonest and illegal actions, from completely ignoring the current overtime hiring protocol up to and including cash bribes or loans given to Sergeant Mike Sovie, responsible for hiring overtime at that time, so that certain unentitled Corrections Officers would receive preference on receiving overtime hours.

85.    At a NYSCOPBA local union meeting (date unknown at this time), Correctional Officer Rick St. Germain (retired) admitted to Plaintiff and to others, that he loaned money to Sergeant Sovie during discussions specifically addressing loans and or cash given to Sergeant Sovie.

86.    Correctional Officer Rick St Germain (retired) stated to Plaintiff in the infirmary at RCF that he made $136,000.00 in one of his last years prior to retirement as a result of the overtime he worked which is approximately $50,000 to $60,000 more annually than the Plaintiff's income.

87.    Plaintiff further learned that several other union members had either given money or loaned money to Sergeant Sovie and it was those officers who were working substantial amounts of overtime, which indicated to the Plaintiff that serious corruption existed within the RCF overtime hiring system.

88.    It was learned by the Plaintiff that other union members were constantly complaining about Sergeant Sovie and other Sergeants unfairly distributing overtime hours in addition to other union members/Correctional Officers using wrongful actions to unfairly gain overtime hours at RCF.

89.    The current overtime hiring system was in effect before the Plaintiff arrived at RCF and has been in effect at RCF since on or about July 19th 2010, when the plaintiff was reassigned to RCF and is still in place to the filing date of this claim.

90.    Past and current local RCF NYSCOPBA Union Representatives and RCF Management have been fully aware of the problems that have existed and still exist in the

17

overtime hiring of Correctional Officers at RCF and have taken absolutely no actions to correct it.

91.    As there was no other avenue for the Plaintiff to resolve the unfair hiring of overtime at RCF, on or about June 5th 2013, the Plaintiff made a motion at a local NYSCOPBA union meeting to have the union representatives conduct a formal facility wide vote on whether or not to switch to a new fair and transparent overtime hiring system, which the Plaintiff proposed, or remain with the current corrupt system.

92.    At the local union meeting on or about June 5th 2013, there was much objection against putting the Plaintiff's proposal up for a vote, by other union members present at this meeting, but the motion was seconded, voted on, in favored of, via hand vote, and carried on to a second meeting vote, as there was not a quorum at the first meeting as required by Roberts Rules of Order.

93.    Roberts Rules of Order are used as a guideline at local Riverview Correctional Facility union meetings.

## Alcoholic Beverage Consumption allowed at NYSCOPBA Local Union Meetings

94.    NYSCOPBA Executives and local NYSCOPBA RCF union representatives had and currently have a duty to ensure that there was, or is, no discrimination, interference, restraint or coercion against the Plaintiff at any union meetings pursuant to the BILL OF RIGHTS section (F) of the contract and sections 3.3 and 3.4 of the contract.

95.    Upon information and belief and observations by the Plaintiff, free alcoholic beverages are consumed at ALL local NYSCOPBA RCF union meetings by union members and

union representatives conducting the meeting before, DURING, and after the meetings, which substantially impedes union meeting productivity and which violates BILL OF RIGHTS section (F) and sections 3.3 and 3.4 of the contract, which denies the Plaintiff his union rights.

96.     Plaintiff has objected to any alcohol being served at local NYSCOPBA union meetings, and has recommended that the meetings be held where no alcoholic beverages are sold, or allowed, as union representatives and union members are sometimes highly intoxicated before such local NYSCOPBA union meetings even begin.

97.     To Plaintiff's knowledge, there are no provisions in the NYSCOPBA union constitution for the purchase or consumption of alcohol before, during or after a union meeting.

98.     NYSCOPBA Executives Members are fully aware of the consumption of alcohol at local NYSCOPBA union meetings, with the alcoholic beverages cost being disguised as food expenditures on the receipts submitted to the NYSCOPBA executives for reimbursements, which violates BILL OF RIGHTS section (F), 3.3 and 3.4 of the contract and 29 USC 431 (b) (2) and 29 USC 501 (a).

99.     As a result of NYSCOPBA executives and local NYSCOPBA union representatives unjustly allowing and actually encouraging alcoholic beverages to be served at local union meetings, the union meetings that the Plaintiff attended to discuss the unfair hiring of overtime were drastically impeded causing the Plaintiff great stress and mental anguish.

100.     On March 2nd 2016, during discussions about the overtime proposal at a local monthly union meeting, Plaintiff was harassed by NYSCOPBA Union Representative James Bell, calling the Plaintiff an "asshole" and making other offensive statements while he was in an intoxicated state, which violated BILL OF RIGHTS section (F) of the contract, sections 3.3 and

19

3.4 of the contract, which denied the Plaintiff his union rights and caused him great stress and mental anguish.

## Non Existence of Union Representative Elections

101.   NYSCOPBA Executives and local NYSCOPBA union representatives had a duty to ensure that local NYSCOPBA elections were conducted so that all union members at RCF, including the Plaintiff, may have a right to choose their desired union representatives pursuant to BILL OF RIGHTS section (F), 3.3 and 3.4 of the contract, article 2, 4 and 6 of the NYSCOPBA constitution and 29 USC 411(a) (1).

102.   NYSCOPBA has not conducted any local union representative elections since the Plaintiff began working at RCF from on or about July 10th, 2010, to the filing date of this claim.

103.   The Plaintiff, at a local NYSCOPBA union meeting (date unknown), requested that the local union representatives conduct an election for the local NYSCOPBA union representative positions, Plaintiff was denied his request.

104.   NYSCOPBA representatives, by not conducting local union representative elections, has denied the Plaintiff and the RCF NYSCOPBA membership their most fundamental democratic right to vote for and choose their union representatives and to benefit from democratic voting results and this in turn is a significant factor in the inaction of local NYSCOPBA union representatives in ensuring equal distribution of overtime hours which as a result violates BILL OF RIGHTS section (F) of the contract, violates sections 3.3 and 3.4 of the contract, violates article 2, 4 and 6 of the NYSCOPBA constitution and 29 USC 411(a)(1) which causes the plaintiff great stress and mental anguish and denies the Plaintiff his union rights, contract rights and lawful rights.

## Appointment of Unelected Local NYSCOPBA Union Representatives

105.   All NYSCOPBA local union representatives at RCF are <u>appointed</u> by <u>previously</u> <u>appointed</u> union representatives, which can continue to harbor union representatives with wrongful objectives as is currently the case.

## NYSCOPBA Local Union Meetings Are Not Made Accessible To All UNION Members

106.   NYSCOPBA Executives and local NYSCOPBA union representatives have a duty to ensure that that all union members have access to monthly union meetings pursuant to NYSCOPBA constitution article 4, BILL OF RIGHTS section (F) of the contract, sections 3.3 and 3.4 of the contract and  29 USC 411(a) (1).

107.   Local NYSCOPBA union representatives conduct only ONE local union meeting per month, at 3:30 pm, for the 7:00 am to 3:00 pm shift only, which is totally INACCESSIBLE to the 3:00 pm to 11:00 pm shift and INCONVENIENTLY ACCESSIBLE to the 11:00 pm to 7:00 am shift, which denies all union members, including the Plaintiff, their right to vote on issues at union meetings, benefit from democratic voting results and to voice their concerns.

108.   NYSCOPBA Executives and local NYSCOPBA union representatives have intentionally neglected to ensure that all union members, including the Plaintiff, are able to attend monthly union meetings.

109.   Union members who are unable to attend local NYSCOPBA monthly union meetings are wrongfully paying for, through their union dues, free food and alcoholic beverages at union meetings for those who are able to attend, while at the same time those same people

who are able to attend are making important decisions, such as the overtime hiring issue, which affects all 250 Correctional Officers, while in an intoxicated state.

110.    NYSCOPBA Executives and local NYSCOPBA union representatives, by neglecting to ensure that all 250 RCF Correctional Officers, including the Plaintiff, are able to attend all local NYSCOPBA union meetings, denies the Plaintiff his democratic right, union right and lawful right to be able to attend local monthly union meeting so that he may address and vote on issues of importance and benefit from the voting results based off of ALL union members not just a few which violates the NYSCOPBA constitution article 4, BILL OF RIGHTS section (F) of the contract, sections 3.3 and 3.4 of the contract and 29 USC 411(a) (1) which denies the Plaintiff his union rights and lawful rights.

**Union Members are Uninformed of Important Local Union Meeting Votes**

111.    Local NYSCOPBA union representatives had a duty to inform all union members of upcoming important union votes pursuant to BILL OF RIGHTS section (F), sections 3.3 and 3.4 of the contract.

112.    NYSCOPBA local union representatives intentionally do not inform all union members of important issues to be voted on at local NYSCOPBA union meetings, so as to intentionally inhibit fair union meeting voting and of which enables them to satisfy their own personal interest and the personal interest of others.

113.    As a result of intentionally not informing all union members of important votes which violates BILL OF RIGHTS section (F), sections 3.3 and 3.4 of the contract which denies the Plaintiff his union rights and contract rights.

22

**The Second Local NYSCOPBA Union Meeting to Address a Facility Vote For the Proposal**

114. As Roberts Rules of Order requires, on or about July 3rd 2013, a SECOND local NYSCOPBA monthly union meeting took place to address the previous months overtime proposal issue of putting the Plaintiff's overtime proposal up for a facility wide vote, a hand vote was again conducted and the proposal was voted in favor of allowing it to go to a facility wide secret ballot vote.

**Comparison between Current Overtime Hiring System and Proposed System**

115. The CURRENT system used for hiring overtime at RCF is a system which, according to RCF union representatives, was agreed upon pursuant to article 15.1(i) of the contract "Local Labor Management Agreement" Between NYS and NYSCOPBA.

116. Plaintiff requested a copy of the current RCF Local Management Agreement pertaining to the overtime hiring policy, but was refused access to it by the previous local NYSCOPBA President Greg Fredricks.

117. The overtime hiring system CURRENTLY used at RCF is based on when a union member last worked, meaning out of a group of Correctional Officers who signed their name in the voluntary overtime sign-up book, whoever worked overtime on the most previous date would be the first one to be offered the overtime position needed to be filled at that time.

118. The system which the Plaintiff introduced to be voted on by the membership is based on the least accumulated overtime hours for the year, meaning out of a group of officers who signed their name in the voluntary overtime book, the union member with the least accumulated hours for the year would get hired first and so on.

23

119.    The major critical difference between the Plaintiff's PROPOSED overtime hiring system and the CURRENT overtime hiring system used to hire Correctional Officer overtime at RCF is that the proposed system keeps track of accumulated overtime hours for each union member and the current system in place does not.

### Passing of the Plaintiff's Overtime Proposal by Formal Vote

120.    Upon the new overtime hiring proposal passing two consecutive local union meeting "hand votes" to allow the proposal to be voted on at a "facility wide level", a "Formal Facility Wide Secret Ballot Vote" was conducted by local NYSCOPBA union representatives on (date unknown at this time) and the Plaintiff's overtime proposal passed by a vote of 73 to 67 (possible error of + or -1) in favor of implementing the proposal.

121.    Prior to the "Formal Facility Wide Vote" pertaining to the overtime issue, the Plaintiff rightfully distributed to the Correctional Officers of RCF, pursuant to National labor Relations Act subsection 8 (c), actual facts about the overtime hiring corruption at RCF, which no one disagreed with, via newsletters, criticizing both local RCF NYSCOPBA Union Representatives and RCF Management for their neglect in resolving RCF overtime hiring system corruption.

122.    The VOTED IN PROPOSAL, as written, did not negatively affect RCF in any way but, if implemented, would have stopped the theft of overtime hours by certain Correctional Officers.

**Failed Labor Management Negotiations by Three NYSCOPBA Union Presidents and RCF**

**Management**

123.   The <u>overtime proposal as voted in</u> was presented to the RCF administrative representative Mike Caldwell (Management) on or about October 25th of 2013, by the then local NYSCOPBA President Greg Fredricks.

124.   The initial <u>proposal as voted in,</u> was given to the RCF Administration on or about October 25, 2013 contained the implementation date of January 1st 2014.

125.   The Facility Administrative Representative Mike Caldwell (Management), disagreed with the proposal as presented to him on or about October 25th 2013.

126.   It was from on or about October 25th 2013 forward that RCF Administrator Mike Caldwell gave numerous verbal objections to the VOTED IN PROPOSAL, and these objections changed on a daily basis.

**Failure to Represent by Local NYSCOPBA Union President Greg Fredricks**

127.   The then local NYSCOPBA Union President Greg Fredricks had a duty to ensure that RCF overtime hours, including the Plaintiff's overtime hours, were equally distributed among the Correctional Officers at RCF, a duty to negotiate a Labor Management Agreement from the VOTED IN OVERTIME PROPOSAL and a duty, if RCF Management refused to negotiate in good faith, to file a grievance stating so pursuant to BILL OF RIGHTS section (F), sections 3.3, 3.4, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act.

25

128. During local NYSCOPBA Union President Greg Fredericks' term as President, RCF Correctional Officer overtime hours, including the Plaintiff's overtime hours, were not equally distributed.

129. From October 25th 2013, Greg Fredricks, the NYSCOPBA local Union President at that time, to the end of his term as Union President when he retired (date unknown), refused to stop the unfair distribution of overtime hours at RCF, refused to negotiate an equitable overtime hiring policy with the RCF Management and furthermore refused to file a grievance on behalf of the Plaintiff or other union members when RCF Management refused to negotiate an Overtime Labor Management Agreement.

130. Greg Fredricks was fully aware that corruption existed within the overtime hiring system at RCF, was fully aware that union members formally voted to have the Plaintiff's proposal implemented and was fully aware that the VOTED IN PROPOSAL was in the best interest of all union members, to include the Plaintiff.

131. The then NYSCOPBA local Union President Greg Fredricks, by refusing his duties to ensure equal distribution of Correctional Officer overtime hours at RCF, by refusing to negotiate an overtime agreement and furthermore refusing to file a formal grievance against the RCF Management for failure to negotiate an overtime agreement in good faith violated BILL OF RIGHTS section (F) and sections 3.3, 3.4, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act which caused the plaintiff great stress and mental anguish, caused the Plaintiff to lose a substantial amount of overtime money, as described in 1 through 130 of this complaint, in his biweekly payroll checks

and in his future retirement income which denied the Plaintiff his union rights, contract rights and lawful rights.

### Failure to Represent by Local NYSCOPBA Union President Jim Bleu

132.    After local NYSCOPBA President Greg Fredricks retired; Union member Jim Bleu began his term as local NYSCOPBA President (specific date unknown).

133.    The then local NYSCOPBA RCF Union President Jim Bleu had a duty to ensure that RCF overtime hours, including the Plaintiff's overtime hours, were equally distributed among the Correctional Officers at RCF, a duty to negotiate a Labor Management Agreement from the VOTED IN OVERTIME PROPOSAL and a duty, if RCF Management refused to negotiate in good faith, to file a grievance stating so pursuant to BILL OF RIGHTS section (F), sections 3.3, 3.4, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act.

134.    During local RCF NYSCOPBA Union President Jim Bleu's term as President, RCF Correctional Officers overtime hours, including the Plaintiff's overtime hours, were not equally distributed.

135.    From the date that Jim Bleu took over as RCF Union President, until the date he resigned from that position (date unknown) he refused to make any efforts to stop the unfair distribution of Correctional Officer overtime hours at RCF, refused to negotiate an equitable overtime hiring policy with the RCF Management and furthermore refused to file a grievance on behalf of the Plaintiff or other union members when RCF Management refused to negotiate a Labor Management Agreement.

136.   Jim Bleu was fully aware that corruption existed in the RCF overtime hiring system, fully aware the union members formally voted to have the Plaintiff's proposal implemented and was fully aware that the VOTED IN PROPOSAL was in the best interest of all union members to include the Plaintiff's.

137.   Then NYSCOPBA local President Jim Bleu, by refusing his duties to ensure equal distribution of Correctional Officer overtime hours at RCF, by refusing his duties to negotiate an overtime agreement and furthermore refusing to file a formal grievance against the RCF Management for failure to negotiate an Overtime Agreement in good faith violated BILL OF RIGHTS section (F), sections 3.3, 3.4, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act which caused the Plaintiff great stress and mental anguish, caused the Plaintiff to lose a substantial amount of overtime money, as described in 1 through 136 of this complaint, in his biweekly payroll checks and in his future retirement income which denied the Plaintiff his union rights, contract rights and lawful rights.

## Failure to Represent by Local NYSCOPBA Union President Terry Pike

138.   After local NYSCOPBA Union President Jim Bleu resigned, Terry Pike began his term as local NYSCOPBA RCF Union President (specific date unknown at this time).

139.   The then local NYSCOPBA Union President Terry Pike had a duty to ensure RCF Correctional Officer overtime hours, including the Plaintiff's overtime hours, were equally distributed among the Correctional Officers at RCF, a duty to negotiate a Labor Management Agreement from the VOTED IN OVERTIME PROPOSAL and a duty, if RCF Management refused to negotiate in good faith, to file a grievance stating so pursuant to BILL OF RIGHTS

28

section (F), sections 3.3, 3.4, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act.

140. During local NYSCOPBA Union President Terry Pikes' term as President, RCF Correctional Officers overtime hours, including the Plaintiff's overtime hours, were not equally distributed.

141. Local NYSCOPBA Union President Terry Pike upon taking his position as President, informed the Plaintiff that he had no intentions of negotiating any agreement or filing any grievance "at all" on the overtime issue, nor did he, until his resignation as Union President (specific date unknown at this time).

142. Terry Pike was fully aware that corruption existed in the RCF overtime hiring system, fully aware that the union members formally voted to have the Plaintiff's proposal implemented and was fully aware that the VOTED IN PROPOSAL was in the best interest of all union members, to include the Plaintiff's.

143. Then NYSCOPBA local Union President Terry Pike, by refusing his duties to ensure equal distribution of Correctional Officer overtime hours at RCF, by refusing to negotiate an Overtime Agreement and furthermore refusing to file a formal grievance, since RCF Management was also refusing to negotiate, violated BILL OF RIGHTS section (F), sections 3.3, 3.4, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act which caused the Plaintiff great stress and mental anguish, caused the Plaintiff to lose a substantial amount of overtime money, as described in 1 through 142 of this complaint, in his biweekly payrolls checks and in his future retirement income which denied the Plaintiff his union rights, contract rights and lawful rights.

29

## Failure to Represent by Local NYSCOPBA Union President Kevin Aldous

144. Upon Terry Pike's resignation as local RCF NYSCOPBA President, Kevin Aldous began his term as local NYSCOPBA Union President (specific date unknown at this time) and is currently still the Union President upon the filing date of this claim.

145. Local NYSCOPBA Union President Kevin Aldous has a duty, since he became local NYSCOPBA Union president, to the filing date of this claim to ensure that RCF Correctional Officer overtime hours are equally distributed among the Officers and to attempt to implement the previously approved Overtime Labor Management Agreement with RCF Management and RCF Correctional Officers, so as to ensure equal distribution of those overtime hours among RCF Correctional Officers pursuant to BILL OF RIGHTS section (F), sections 3.3, 3.4, 15.1(a), of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act.

146. Since local NYSCOPBA Union President Kevin Aldous' began his term as President, RCF Correctional Officers overtime hours were not equally distributed and are still not equally distributed to the filing date of this claim.

147. Local NYSCOPBA Union President Kevin Aldous has refused to ensure that RCF Correctional Officer overtime hours have been equally distributed and has refused to make any attempts to implement the previously approved Overtime Labor Management Agreement which was unjustly voted down as described in the latter part of this complaint.

148. Kevin Aldus is fully aware that corruption exists in the RCF overtime hiring system, is fully aware that the union members formally voted to have the Plaintiff's proposal

implemented and is fully aware that the VOTED IN PROPOSAL was in the best interest of all union members to include the Plaintiff.

149.    Local NYSCOPBA President Kevin Aldus, by refusing his duties to ensure equal distribution of Correctional Officer overtime hours at RCF and by refusing to make any attempts to implement the previously approved and wrongly voted down Overtime Labor Management Agreement has violated BILL OF RIGHTS section (F), sections 3.3, 3.4, 15.1(a), of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act which caused the Plaintiff great stress and mental anguish, caused the Plaintiff to lose a substantial amounts of overtime money, as described in paragraphs 1 through 148 of this complaint, in his biweekly payroll check and in his future retirement income, which denied the Plaintiff his union rights, contract rights and lawful rights.

## Deputy Superintendent Mike Caldwell's Neglect and Refusal to Negotiate

150.    RCF Deputy Superintendent of Security Mike Caldwell (the highest ranking uniformed security officer at RCF) and the individual who represented RCF Management throughout all negotiations on the overtime proposal issue, had a duty to ensure that RCF Correctional Officer overtime hours, including the Plaintiff's overtime hours, were equally distributed among RCF Correctional Officers and had a duty to negotiate in good faith a Labor Management Agreement from the VOTED IN OVERTIME PROPOSAL pursuant to BILL OF RIGHTS section (F), sections 3.3, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a-1-a, b, c and d of the Public Employees Fair Employment Act.

151.    From the time the Plaintiff arrived at RCF for employment as a Corrections Officer on or about July 19th, 2010, to the filing date of this claim, Mike Caldwell has been

31

Deputy Superintendent of Security and during this same time, RCF Correctional Officer overtime hours have not been equally distributed at RCF.

152.   From on or about July 19th, 2010, to on or about October 25 2013, Deputy Superintendent Mike Caldwell neglected to ensure RCF Correctional Officer overtime hours were equally distributed at RCF.

153.   From on or about October 25th 2013 to the filing date of this claim Deputy Superintendent Mike Caldwell intentionally neglected to ensure overtime hours were equally distributed at RCF as an act of revenge because the Plaintiff rightfully criticised him for neglecting his duties in regards to the overtime corruption.

154.   From on or about October 25th 2013 to on or about November 9th of 2015, Deputy Superintendent Mike Caldwell intentionally refused, to negotiate a Labor Management Agreement from the VOTED IN OVERTIME HIRING PROPOSAL with three local NYSCOPBA union presidents giving numerous unjust reasons that changed on a daily basis as an act of revenge against the Plaintiff, because the Plaintiff rightfully criticised him for neglecting his duties in regards to the overtime corruption until he was forced by DOCCS acting Corrections Commissioner Anthony Annucci to negotiate such an agreement.

155.   Deputy Superintendent Mike Caldwell was, and still is, fully aware that corruption exists within the RCF Correctional Officer overtime hiring system.

156.   As a result of Deputy Superintendent Mike Caldwell's neglecting and then intentionally neglecting his duties to ensure overtime hours were equally distributed among Correctional Officers at RCF, for which he was responsible for and then refusing to negotiate in good faith a transparent, fair and equitable Overtime Labor Management Agreement from the

32

VOTED IN OVERTIME PROPOSAL, during formal and informal discussions with three local NYSCOPBA Union Presidents, whether it was in private or otherwise which was done for the sole purpose of retaliation against the Plaintiff for exposing the overtime corruption at RCF and exposing his neglected duties in ceasing the overtime corruption, violated BILL OF RIGHTS section (F), sections 3.3, 15.1(a), 15.1 (i), 25.1 and 25.4 of the contract and sections 209-a- 1- (a),(b),(c) (d) and (e) of the Public Employees Fair Employment Act which caused the Plaintiff great stress and mental anguish, caused the Plaintiff to lose a substantial amount of money in his biweekly payroll checks and in his future retirement income, as described in 1 through 155 of this complaint which denied the Plaintiff his union rights, contract rights and lawful rights.

## Failure to ensure equal distribution of Correctional Officers overtime hours at RCF by Superintendent Calvin Rabsatt (retired)

157.    RCF Superintendent Calvin Rabsatt had a duty to ensure equal distribution of Correctional Officer overtime hours at RCF and a duty to ensure RCF overtime job assignments were assigned based off of seniority pursuant BILL of Rights section (F), and sections 3.3, 15.1(a), and 24.3 of the contract and sections 209-a-1 a, b, c, d and e of the Public Employees Fair Employment Act.

158.    RCF Correctional Officer overtime hours were not equally distributed from on or about July 19th, 2010, to the date that Calvin Rabsatt retired as Superintendent at RCF (date unknown at this time) and RCF overtime job assignments were not assigned based on seniority, during that same time period.

159.    RCF Superintendent Calvin Rabsatt neglected his duties to ensure equal distribution of RCF Correctional Officer overtime hours and neglected to ensure RCF overtime job assignments were assigned based on seniority.

160.    RCF Superintendent Calvin Rabsatt, by intentionally neglecting his duty to ensure RCF Correctional Officer overtime hours were equally distributed and neglecting to ensure that RCF overtime jobs were assigned by seniority, violated BILL of Rights section (F), and sections 3.3, 15.1(a), and 24.3 of the contract and sections 209-a-1 a, b, c, d and e of the Public Employees Fair Employment Act which caused the Plaintiff great stress and mental anguish and caused the Plaintiff to lose a substantial amount of money both in his biweekly payroll checks and in his future retirement income, as described in 1 through 159 of this complaint, which denied the Plaintiff his union rights, contract rights and lawful rights.

## RCF Unequal Correctional Officer Overtime Distribution, Overtime Job Assignments and Failure to Act by Superintendent Brian McAuliffe

161.    When Calvin Rabsatt retired as Superintendent at RCF, Brian McAuliffe became the new Superintendent at RCF (date unknown at this time) and is still the RCF Superintendent.

162.    RCF Superintendent Brian McAuliffe had a duty to ensure equal distribution of Correctional Officer overtime hours at RCF, had a duty to ensure that overtime job assignments were assigned based on seniority, meaning the most senior Correctional Officers is entitled to pick whatever overtime job is available at the time, and he had a duty to ensure the Plaintiff was not harassed pursuant to BILL of Rights section (F), and sections 3.3, 15.1(a), 24.3 and 22.1 of the contract and sections 209-a-1 a, b, c, d and e of the Public Employees Fair Employment Act.

34

163.    RCF Correctional Officer overtime hours have not been equally distributed from on or about July 19th, 2010, to the filing date of this complaint, RCF Correctional Officer overtime job assignments have not been assigned based on seniority from on or about July 19th, 2010, to the filing date of this complaint and RCF Superintendent Brian McAuliffe took absolutely no actions to stop the harassment against the Plaintiff as it was reported to him by the Plaintiff on April 4th, 2016, and again on June 23rd, 2016.

164.    RCF Superintendent Brian McAuliffe intentionally neglected his duties to ensure equal distribution of Correctional Officer overtime hours at RCF, neglected to ensure overtime positions were assigned based on seniority and refused to take any actions to stop or even lessen the harassment by known and unknown others against the Plaintiff and this neglect is ongoing.

165.    Some RCF Sergeants responsible for assigning RCF Correctional Officers their jobs do use seniority as a basis to hire non overtime positions, but no RCF Sergeants assign overtime positions by seniority, as has been past practice to do so.

166.    RCF Superintendent Brian McAuliffe, by intentionally neglecting to ensure RCF Correctional Officer overtime hours are equally distributed, by neglecting to ensure RCF Correctional officer overtime is assigned based on seniority and by refusing to take any action at all to stop or lessen the harassment the Plaintiff has endured violated BILL of Rights section (F), and sections 3.3, 15.1(a), 24.3 and 22.1 of the contract and sections 209-a-1 a, b, c, d and e of the Public Employees Fair Employment Act, which caused the Plaintiff great stress and mental anguish and caused the Plaintiff to lose a substantial amount of money, as described in 1 through 165 of this complaint, both in his biweekly payroll checks and in his future retirement income, which denied the Plaintiff his union rights, contract rights and lawful rights

35

## First Grievance Filed by Plaintiff

167.    As a result of three NYSCOPBA local Presidents and RCF's Management's refusal to agree on an Overtime Proposal and approximately 11 months after the union membership voted to implement Plaintiff's Overtime Proposal, the Plaintiff filed the first grievance on or about March 4th 2014 (specific date unknown) containing the allegations that the RCF Administration was not negotiating in good faith in coming to an agreement on the Overtime Proposal.

## Step 1 Hearing for first Grievance Filed by Plaintiff

168.    On or about March 8th. 2014 (specific date unknown at this time) a Step 1 Grievance Meeting was conducted with RCF Management Representative Mike Caldwell, local Union President Greg Fredricks (a Defendant in this action) and the Plaintiff, at which time Mr. Caldwell indicated to Plaintiff that Sergeant Sovie was violating the current overtime hiring policy.

169.    RCF Corrections  Sergeant Mike Sovie  had a duty to equally distribute Correctional Officers overtime hours according to the overtime hiring policy in place pursuant to BILL OF Rights (F), 3.3 and 15.1 (a) of the contract.

170.    Sergeant Mike Sovie did not equally distribute RCF Correctional Officer overtime hours according to 1 through 169 of this complaint when he was responsible for doing so.

171.    RCF Sergeant Mike Sovie, by not equally distributing RCF Correctional Officer overtime hours violated BILL OF Rights (F), sections 3.3 and 15.1(a) of the contract which caused the Plaintiff great stress and mental anguish, caused the Plaintiff to lose substantial

amounts of overtime money both in his biweekly payroll check and in his future retirement income as described in 1 through 170 of this complaint which denied the Plaintiff his union rights, contract rights and lawful rights.

172.    At the Plaintiff's Step1 Grievance Hearing, on or about March 8th 2014, RCF Management Mike Caldwell again refused to negotiate an Overtime Agreement and the grievance went to Step 2.

### Step 2 Hearing for First Grievance Filed by Plaintiff

173.    At the Step 2 Grievance Meeting, Labor Relations Representative D. Gallagher felt the Plaintiff's grievance was premature, even though there had been 11 months of attempted negotiations, and recommended that the Plaintiff continue to make efforts to negotiate an agreement, the Plaintiff in good faith, agreed to make further efforts and signed off on that particular grievance.

### Second Grievance Filed by Plaintiff

174.    After no further action was taken by local RCF NYSCOPBA representatives or RCF Management to finalize a Labor Management Agreement, on or about October 2nd 2014, the Plaintiff filed a second grievance against the RCF Management for failure to negotiate in good faith in relation to implementing an agreed upon, VOTED IN, OVERTIME HIRING PROPOSAL.

### Step 1 Hearing for Second Grievance

175.    A Step 1 Grievance Hearing was conducted at RCF on or about October 31st 2014, in relation to the Plaintiff's October 2nd 2014 filed grievance, with no resolution.

176. The Plaintiff had no contractual control of his grievance past the Step 1 grievance procedure, pursuant to section 7.2 of the contract.

## Step 2 Hearing for Second Grievance

177. A Step 2 Grievance Hearing was conducted at RCF on December 26th 2014, addressing the Plaintiff's grievance, with Michelle O'Gorman representing New York State Labor Relations Department.

178. New York State representative Michelle O'Gorman had a duty to take some type of action to address the refusal of RCF Management to negotiate an Overtime Labor Management Agreement with local NYSCOPBA union representatives and a duty to file a timely response to the Step 2 Grievance pursuant to BILL OF RIGHTS (F), 3.3 and 7.2(a) Step 2 of the contract.

179. New York State representative Michelle O'Gorman intentionally neglected to take any action to resolve RCFs refusal to negotiate with the RCF union representatives and intentionally delayed a response to the Plaintiffs Step 2 Grievance Hearing until November 19th 2015, almost 11 months after the Step 2 hearing was held, instead of the contractually required 10 days, according to NYSCOPBA Executives and documents.

180. By New York State representative Michelle O'Gorman intentionally neglecting her duties to take any action to resolve the refusal of RCF Management to negotiate with RCF union representatives and intentionally delaying the response to the Plaintiffs Step 2 hearing violated BILL OF RIGHTS (F), 3.3 and 7.2(a) step 2 of the contract which caused the Plaintiff great stress and mental anguish and caused the Plaintiff to lose substantial amounts of money

both in his biweekly payroll checks and in his future retirement income which denied the Plaintiff his union rights and contract rights.

## NYSCOPBA Executives Wrongfully Discarded the Plaintiffs Grievance

181.    On or about November 20th 2015, the Plaintiff received a NYSCOPBA executive response in regards to his Step 2 Grievance, indicating to the Plaintiff and quoting "there was no contractual provision to unilaterally impose union membership driven initiative regarding overtime without the consent of RCF management and that they were abandoning the grievance", the Plaintiff concluded that the NYSCOPBA executive President chose to represent RCFs Correctional Sergeants and not the RCF Correctional Officers, as NYSCOPBA executive President Mike Powers used to work at RCF, as a Sergeant, and therefore any further efforts through NYSCOPBA or RCF Management would be futile.

## Letter sent to NYS Corrections Acting Commissioner Anthony Annucci by Plaintiff

182.    On October 7th 2015, Plaintiff wrote and mailed a letter to DOCCS Acting Corrections Commissioner Anthony Annucci, informing him of the corruption and unfair distribution of Correctional Officer overtime hours at RCF and the refusal of RCF Management to negotiate a Labor Management Agreement from the VOTED IN PROPOSAL, requesting his assistance in the matter.

183.    On November 9th 2015, over one month later, Plaintiff received a response back from Acting Corrections Commissioner Anthony Annucci, indicating to the Plaintiff that he should bring the issue back to the local union representatives and that they should bring it to a Local Labor Management Meeting for discussion and possible implementation and that Mr. Annucci was also referring the corruption to the Office of Special Investigations for review.

184.    The NYS Office of Special Investigations is responsible for investigating corruption within The NYS DOCCS.

## NYS Corrections Acting Commissioner Anthony Annucci Intentionally Neglected His Duties

185.    DOCCS Acting Corrections Commissioner Anthony Annucci, again, had a duty to ensure that the RCF Correctional Officer Overtime distribution corruption was investigated especially when the corruption was specifically reported to him on October 7th 2015 by the Plaintiff pursuant to BILL OF RIGHTS section (F), 3.3 and 15.1(a) of the contract and sections 209-a- 1-a, b, c, d and e of the Public Employees Fair Employment Act.

186.    From October 7th 2015, when the Plaintiff wrote the letter to DOCCS Corrections Commissioner Anthony Annucci explaining the corruption within the RCF Correctional Officers overtime hiring system and requesting his assistance in the matter, to the filing date of this claim no investigation of any kind has been conducted by the NYS Office of Special Investigations or any other agency.

187.    DOCCS Acting Corrections Commissioner Anthony Annucci intentionally neglected his duty to have the corruption within the RCF overtime hiring system investigated as an act of revenge against the Plaintiff for sending him a complaint and for filing grievances against RCF Management.

188.    DOCCS Acting Corrections Commissioner Anthony Annucci, by neglecting his duty to have the corruption investigated within the RCF Correctional Officer overtime hiring system as reported to him violated BILL OF RIGHTS section (F), 3.3, 15.1(a) and 22.1 of the contract and sections 209-a- 1-a, b, c, d and e of the Public Employees Fair Employment Act

which caused the Plaintiff great stress and mental anguish which denied the Plaintiff his union rights, contract rights and lawful rights.

## RCF Management forced to Negotiate

189.    Shortly after the Plaintiff received the response from Acting Corrections Commissioner Anthony Annucci, on or about November 9th 2015, the Plaintiff was contacted by a local NYSCOPBA representative (date unknown at this time) stating that the Administration was now willing to negotiate on the issue of the new proposed overtime hiring policy.

## NYSCOPBA Representatives Again Refused to Negotiate a Labor Management Agreement

190.    After the Plaintiff was informed by a local NYSCOPBA union representative that the Administration was now willing to negotiate an Overtime Agreement pertaining to an overtime hiring procedure, again no steps of any kind were taken by local or executive NYSCOPBA union representatives to negotiate.

191.    Upon the RCF Management and the NYSCOPBA Union Representatives, again, taking no action on negotiating an Overtime Labor Management Agreement, the Plaintiff attended a local union meeting on or about December 2nd 2015 or on or about January 6th of 2016 (specific date unknown at this time) to request action be taken to negotiate a final overtime agreement at which time a committee was formed to address the issue.

## Three Labor Management Committee Meetings on the Overtime Proposal

192.    A committee was formed on or about January 2016 (specific date unknown at this time) to negotiate the Overtime Proposal, consisting of Deputy Superintendent of Security Mike Caldwell, Captain Rick Adams and Sergeant Scott Clary representing the RCF Management and

NYSCOPBA representative James Bell, Corrections Officer Steve Barr and the Plaintiff representing the approximately 250 union members/Correctional Officers at RCF.

193.    The Plaintiff, Randy Bell, is not related to Local NYSCOPBA union representative James Bell.

### Intentional Interference by local NYSCOPBA Union representative James Bell

194.    Local NYSCOPBA union representatives James Bell had a duty to not interfere with the Labor Management Committee negotiations and the proper representation of the Plaintiff and approximately 250 other Correctional Officers pursuant to BILL OF RIGHTS section (F) of the contract and sections 3.3, 3.4 and 25.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209-a-2 a, b and c.

195.    Union representative James Bell later intentionally replaced Corrections Officer and Overtime Committee Member Steve Barr with Corrections Officer Tony Harper, a union member who was known to work a substantial amount of overtime, was against the implementation of the overtime proposal, and was alleged to have unfairly gained overtime hours under the current corrupt overtime hiring system; the Plaintiff objected to Correctional Officer Tony Harpers' placement on the committee, but James Bell allowed him to stay on the committee in a negotiating union capacity anyway.

196.    It was later learned that Overtime Committee member Tony Harper was in fact gaining unentitled overtime hours from Sergeant Scott Clary.

197.    By intentionally placing Tony Harper on the committee against the Plaintiff's wishes and against the best interest of 250 other RCF Correctional Officers and knowing that

Tony Harper was against the overtime proposal being implemented, in addition to knowing Mr. Harper worked substantial amounts of overtime, union representative James Bell violated BILL OF RIGHTS section (F) and sections 3.3, 3.4 and 25.4 of the contract and violated Article 14 Public Employees Fair Employment Act sections 209-a-2 a, b and c which caused the Plaintiff great stress and mental anguish and denied the Plaintiff his union rights, lawful rights.

## First Overtime Committee Meeting

198.   On or about January 6th 2016 (specific date unknown at this time) the first of three Overtime Committee Meetings was conducted in the RCF Conference Room.

199.   During all of the RCF Overtime Committee Meetings Deputy Superintendent of Security Mike Caldwell (Management) had a duty to conduct the meetings in good faith and to not discriminate, interfere, restrain or coerce any party to the meeting pursuant to BILL OF RIGHTS section (F), sections 3.3 and 25.4 of the contract.

200.   On or about January 6th 2016, during the first Overtime Committee Meeting, RCF Deputy Superintendent of Security Mike Caldwell (Management) placed NYSCOPBA union member and the Plaintiff's Supervisor, Sergeant Scott Clary, on the same side of a long table (in the Conference Room) representing Management and sat Sergeant Scott Clary between himself (Management) and Captain Rick Adams also Management.

201.   RCF Deputy Superintendent of Security Mike Caldwell intentionally and wrongfully used Sergeant Scott Clary, a NYSCOPBA union member to negotiate against the Plaintiff, who is also a NYSCOPBA union member.

43

202.    RCF Deputy Superintendent of Security Mike Caldwell, by intentionally using a NYSCOPBA union member/Corrections Sergeant Scott Clary, the Plaintiff's direct Supervisor, to negotiate against the Plaintiff, a Corrections Officer who is also a NYSCOPBA union member, and by placing him in between himself and Captain Rick Adams, on the same side of the long conference table, for the sole purpose of intimidating the Plaintiff, was revenge against the Plaintiff for exposing the corruption within the RCF overtime hiring system, revenge for exposing Mr. Caldwell neglecting his duties to insure Correctional officer Overtime hours were equally distributed and of which interfered with the meeting, and which violated BILL OF RIGHTS section (F), sections 3.3 and 25.4 of the contract, and Article 14 of the Public Employees Fair Employment Act sections 209-a- 1-a, b, c and d, which caused the Plaintiff great stress and mental anguish and caused the Plaintiff to lose a substantial amount of overtime money in his biweekly payroll check and in his future retirement income which denied the Plaintiff his union rights and lawful rights.

### Second Overtime Committee Meeting

203.    At the second Overtime Committee Meeting (date unknown at this time) at RCF, the issues of contention by the RCF Management were: (1) whether or not to allow ALL union members access to view the overtime roster containing all union members total accumulated overtime hours for the year, herein referred to as the roster, (2) the inclusion of Corrections Emergency Response Teams, herein after referred to as CERT and the Crisis Intervention Units, herein referred to as CIU, overtime hours into the overtime roster and (3) the renewal date of the roster.

204.     RCF Deputy Superintendent Mike Caldwell had a duty to conduct all Overtime Committee Meetings in good faith pursuant to BILL OF RIGHTS (F), 3.3, 15.1(i) and 25.4 of the contract and Article 14 Public Employees Fair Employment Act sections 209-a- 1-a, b, c and d.

205.     Neither the CERT or CIU overtime, nor any other reason given by the RCF Management Mike Caldwell, was a sincere concern of the RCFs Management in refusing to implement the overtime hiring proposal as voted in and as written, it was simply used as an excuse to retaliate against the Plaintiff for exposing the corruption of the overtime hiring policy at RCF, exposing Mr. Caldwell neglecting his duties in not ensuring Correctional Officers overtime hours, including the Plaintiff's overtime hours, were equally distributed and for reporting the corruption to Corrections Commissioner Anthony Annucci (who is Mr. Caldwell's superior Supervisor)

206.     By Deputy Superintendent Mike Caldwell intentionally refusing to conduct all Overtime Committee Meetings in good faith violated BILL OF RIGHTS (F), 3.3, 15.1(i) and 25.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209-a- 1-a, b, c and d which caused the Plaintiff great stress and mental anguish which denied the Plaintiff his union rights and lawful rights.

207.     Local NYSCOPBA union representative James Bell and union member Tony Harper, acting in a union official capacity, during all Overtime Committee Meetings had an obligation and duty to sincerely represent the best interest of all 250 RCF union members including the best interest of the Plaintiff pursuant to BILL OF RIGHTS section (F), 3.3, 3.4 and

25.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act.

208. At the second meeting of the Overtime Committee all other overtime committee members, except the Plaintiff, argued against allowing all union members to view the overtime roster.

209. Local NYSCOPBA union representative James Bell and Correctional Officer Tony Harper, who were both acting in a union representative capacity, intentionally fought against arguing in favor of the overtime roster being viewed by all RCF Correctional Officers because Mr. James Bell wanted revenge on the Plaintiff for exposing them neglecting their duties to ensure equal distribution of overtime hours and Mr. Tony Harper fought against the officers viewing the roster as he wanted to continue to steal overtime hours away from other officers.

210. The overtime roster in the PROPOSED OVERTIME HIRING SYSTEM is a set of documents that would be of the most extreme importance as it is those documents that would ensure equitable distribution of overtime and eliminate the theft of overtime hours and the motive for it.

211. By local NYSCOPBA union representative James Bell and Correctional Officer Tony Harper, acting in a union representative capacity, intentionally arguing against allowing all RCF Correctional Officers to view the overtime roster containing all officers total accumulated hour for the year violated  BILL OF RIGHTS section (F), 3.3, 3.4 and 25.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209-a- 2 a, b and c which caused the Plaintiff great stress and mental anguish and which denied the Plaintiff  his union rights and lawful rights.

46

212.   The current roster containing the last dates worked under the CURRENT overtime hiring system at RCF, which is of equal importance as the proposed systems overtime roster containing all union members total accumulated hours for the year, has been easily accessible to all union members including the Plaintiff, from 2010 to the filing date of this claim, union representative James Bell, union member Tony Harper, RCF Management including Mike Caldwell and all other union members are fully aware of this.

213.   At the end of the 2nd Overtime Committee Meeting it was agreed upon that there would be a third and final meeting to continue discussions on the issues of CERT, CIU and when the overtime roster would be renewed, at which time it was the Plaintiff's intention to further discuss the overtime roster accessibility by all union members, including the Plaintiff.

214.   At the end of the 2nd meeting Sergeant Scott Clary, the Management representative and NYSCOPBA union member, stated to the Plaintiff as they were walking out the door that "he only called Tony Harper, the other committee member representing the union members, to do overtime **all the time**, "because he always answers his phone".

215.   Corrections Sergeant Scott Clary had a duty to equally distribute Correctional Officers overtime hours according to the overtime hiring policy in place pursuant to BILL OF Rights (F), 3.3 and 15.1 (a) of the contract.

216.   Sergeant Scott Clary, by stating to the Plaintiff that he only calls union member Tony Harper for overtime, confirmed the allegations that union member Tony Harper was unfairly gaining overtime hours at RCF and that the current overtime hiring practice at RCF is inequitable.

47

217.   By only calling union member Tony Harper for overtime, Sergeant Scott Clary violated BILL OF Rights (F), sections 3.3 and 15.1(a) of the contract, which caused the Plaintiff great stress and mental anguish and caused the plaintiff to lose substantial amounts of money in both his biweekly payroll checks and in his future retirement income which denied the Plaintiff his contract rights and union rights.

### Third Overtime Committee Meeting

218.   On February 11th 2016, the third and final Overtime Committee Meeting was conducted at RCF.

219.   At the beginning of the third Overtime Committee Meeting conducted on or about February 11th 2016 at RCF, Deputy Superintendent for Security Mike Caldwell slid across the negotiating table to union representative James Bell a pre-typed up agreement dated February 4th 2016, which encompassed the exclusion of union members being able to view the overtime roster, the inclusion of CERT and CIU overtime meetings hours (4 hours a month), the exclusion of CERT and CIU overtime hours when they are activated for emergencies and the inclusion of the overtime roster being renewed every 6 month, not every 12 months as the Plaintiff argued, for and as it created an additional needless avenue of corruption.

220.   NYSCOPBA union representative James Bell, union member Tony Harper, acting in a union representative capacity, and Deputy Superintendent Mike Caldwell had a duty to come to an agreement within the Overtime Committee Meetings, not in private, pursuant to BILL OF RIGHTS (F), sections 3.3, 3.4 and 25.4 of the contract and, Article 14 of the Public Employees Fair Employment Act sections 209-a- 1-a, b, c and d and 209 a 2 a, b and c.

221.    NYSCOPBA union representative James Bell, union member Tony Harper, acting in a union representative capacity, and Deputy Superintendent Mike Caldwell **did** privately come to an Overtime Labor Management Agreement on February 4th <u>outside</u> of the Labor Management Committee, 7 days before the final Overtime Committee Meeting took place on February 11th 2016.

222.    NYSCOPBA union representative James Bell and union member Tony Harper acting in a union representative capacity and Deputy Superintendent Mike Caldwell by coming to an agreement privately and outside of the Overtime Negotiating Committee Meeting on February 4th 2016, 7 days before the last meeting took place on February 11th, violated BILL OF RIGHTS section (F), 3.3, 3.4 and 25.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209-a- 1-a, b, c and d and 209 a 2 a, b and c which caused the Plaintiff great stress and mental anguish and which denied the Plaintiff his union rights, contract rights and lawful rights.

223.    The 3rd February 11th, 2017, Overtime Committee Meeting ended with the Plaintiff objecting to the proposal as written and the "pre-typed and privately prearranged agreement" being sent to NY Labor Relations and NYSCOPBA's Executive Offices for their approval.

### Attempted Assault on Plaintiff by Corectional Officer Tony Harper

224.    Correctional Officer Tony Harper had a duty to conduct himself in a manner consistent with a Correctional Officer and an Officer acting in a union capacity pursuant to BILL OF RIGHTS (F), sections 3.3, 3.4, 22.1and 25.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209 a 2 a, b and c.

49

225.    At the third Overtime Committee Meeting at RCF, upon exiting the meeting room union member Tony Harper attempted to physically assault the Plaintiff, when Plaintiff asked him "why did you lay down", Tony Harper additionally stated to Plaintiff "I'll see you in the parking lot", amongst other harassing and threatening statements.

226.    On February 3rd 2016, union member Tony Harper, acting in a union representative capacity, by threatening and attempting to assault the Plaintiff violated BILL OF RIGHTS section (F), sections3.3, 3.4, 22.1 and 25.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209 a 2 a, b and c which caused the Plaintiff great stress and mental anguish and which denied the Plaintiff his union rights and lawful rights.

## Labor Management Agreement Received by Local Management and Local NYSCOPBA Representatives

227.    On or about March 23rd 2016, the RCF Management and the local RCF union representatives received the "fully approved by all parties, Labor Management Agreement relating to the hiring of overtime at RCF" to be implemented on January 1st 2017.

## Request for Assistance from the United States Department of Labor

228.    On or about March 15thth 2016, the Plaintiff went to the United States Department of Labor, in Syracuse New York, to request assistance on the corruption taking place at RCF in relation to the contents of this claim at which time they informed him that they could not help, but directed him to the Federal Bureau of Investigation (FBI) located directly across the street.

**Request for Assistance from the Federal Bureau of Investigation**

229.   On March 24th 2016, at the direction of the US Department of Labor, the Plaintiff proceeded to the Federal Bureau of Investigation building where he requested assistance on the corruption taking place at RCF in relation to the contents of this claim, at which time they informed him that they could not help and that the only thing he could do is go to court.

## April 6th 2016 Local NYSCOPBA Union Meeting Which Wrongly Stopped Implementation of the Overtime Labor Management Agreement.

230.   On April 6th 2016, a local monthly NYSCOPBA union meeting was conducted and chaired by local Union President Terry Pike.

231.   NYSCOPBA local Union President Terry Pike and NYSCOPBA union representative James Bell had a duty to not interfere with the implementation of the "Fully approved by all parties Overtime Labor Management Agreement", which was in the best interest of all approximately 250 RCF Correctional Officers, to include the Plaintiff pursuant to BILL OF RIGHTS (F), sections 3.3, 3.4 and 15.1(a) of the contract, Roberts Rules of Order sections 46 and 47 and the NYSCOPBA Constitution Article II and VII (b) and sections 209-a-2 a, b and c of the Public Employees Fair Employment Act.

232.   At the April 6th, 2016, NYSCOPBA local union meeting, NYSCOPBA union representative James Bell wrongfully made a motion on whether or not to implement the "previously voted in and fully approved by all parties Overtime Labor Management Agreement" at which time it was voted down 23 to 5 NOT to implement it and local NYSCOPBA union President Terry Pike who was responsible for controlling the meeting did nothing to stop it.

51

233. All union members DID NOT have access to the April 6th 2016 local NYSCOPBA union meeting.

234. Local NYSCOPBA union representatives did not inform ahead of time ALL UNION MEMBERS that a local NYSCOPBA union hand vote was to take place on whether or not to implement the previously approved Overtime Labor Management Agreement which violated Roberts Rules of Order.

235. Local NYSCOPBA union members and union representatives DID SPECIFICALLY INFORM those union members who unfairly worked substantial amounts of overtime that a hand vote was to take place at the April 6th 2016 meeting regarding the implementation of the previously "fully approved Overtime Hiring Labor Management Agreement", for the sole purpose of wrongfully stopping the implementation of the agreement so that they could continue to steal overtime hours away from other RCF correctional Officers.

236. Such actions at the April 6th 2016 meeting committed by James Bell and Terry Pike violated BILL OF RIGHTS section (F), sections 3.3 3.4 and 15.1(a) of the contract, Roberts Rules of Order sections 46 and 47, the NYSCOPBA Constitution Article II and VII (b) and sections 209-a-2 a, b and c of the Public Employees Fair Employment Act which denied the Plaintiff his union rights and lawful rights.

### Request from NYS Public Relations Board for Assistance

237. Plaintiff, from April to July of 2016 (specific dates unknown at this time) filed three detailed complaints to the New York State Public Employment Relations Board (herein referred to as PERB) requesting their assistance on the issues contained within this complaint and received only responses of unjust "notices of deficiencies".

52

238.    PERB took no action against NYS or NYSCOPBA granted it under article 14 of the Public Employees Fair Employment Act in relation to the complaints sent to them by the Plaintiff.

239.    Local NYSCOPBA Union representative James Bell had a duty to not harass the Plaintiff pursuant to BILL OF RIGHTS (F), section 3.3 and 3.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209 a 2 a, b and c.

240.    Local NYSCOPBA union representative James Bell on (date unknown at this time) taunted the Plaintiff because Plaintiff failed in his attempts to get assistance from the NYS PERB and stated to the Plaintiff "aww your PERB complaints didn't do shit did they?"

241.    By local NYSCOPBA union representative James Bell harassing the Plaintiff violated BILL OF RIGHTS section (F) and sections 3.3 and 3.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209 a 2 a, b and c which caused the Plaintiff great stress and mental anguish and which denied the Plaintiff his union rights.

## Life Endangering Incident by NYSCOPBA Union Representative James Bell towards Plaintiff

242.    Local NYSCOPBA Union representative James Bell again had a duty to not harass or endanger the Plaintiff pursuant to BILL OF RIGHTS (F), section 3.3 and 3.4 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209 a 2 a, b and c.

243.    On June 23rd 2016, local union representative James Bell harassed and jeopardized the Plaintiff's life by intentionally making several false allegations to include "I

heard you got kicked out of Clinton for beating up your wife", intentionally saying this in a loud voice in close proximity of inmates inside the RCF, in an attempt to persuade the inmates to turn against and harm the Plaintiff.

244.    By local union representative James Bell harassing the Plaintiff and endangering his life on June 23rd 2016, he violated BILL OF RIGHTS section (F), sections 3.3, 3.4 and 22.1 of the contract and Article 14 of the Public Employees Fair Employment Act sections 209 a 2 a, b and c .which caused the Plaintiff great stress and mental anguish, intentionally endangered the Plaintiffs life which denied the Plaintiff his union rights and lawful rights.

245.    As a result of union representative James Bell harassment and life endangering actions against the Plaintiff on June 23rd 2016, the Plaintiff directly after, was forced to go to an Ogdensburg Medical Center where it was ascertained and documented by medical staff that the Plaintiff's blood pressure was extremely high and that he was exceedingly upset.

246.    Plaintiff on June 23rd 2016, as a direct result of local NYSCOPBA union representative James Bell endangering actions towards the Plaintiff on June 23rd 2016, was directed by medical staff to take approximately 10 days off of work, 5 of which were charged to Plaintiff's sick time accruals, Plaintiff took 10 days off.

247.    When Plaintiff left RCF on June 23rd 2016, as a result of an Occupational Injury caused by union representative James Bell within the RCF, Plaintiff was entitled to Workers Compensation as a New York employee, pursuant WCL 3 group 16 and 14.9(a) of the contract.

**Retaliation by Sergeant and NYSCOPBA Representative Steve Garabrandt against the Plaintiff**

248.    Sergeant Steve Garabrandt is the sole NYSCOPBA union representative at RCF that holds the rank of Sergeant and is also the Plaintiff's Supervisor.

249.    Local NYSCOPBA union representative Sergeant Steve Garabrandt had a duty to record the Plaintiff's absence on June 23rd 2016, when the Plaintiff was forced to leave as result of union representative James Bell's wrongful actions, as Workers Compensation Leave pursuant WCL 3 group 16 and 14.9(a) of the contract.

250.    Sergeant Garabrandt, on June 23rd 2016, intentionally and wrongfully recorded the Plaintiff's absence, as personal sick, using the Plaintiff's sick time accruals, instead of the entitled Workman's Compensation Benefit as required, and as he is well aware of, in an act of revenge against the Plaintiff for exposing the overtime corruption involving the Sergeants that he represents at RCF.

251.    Plaintiff currently makes $34.79 per hour straight time as a Correctional Officer.

252.    Sergeant Steve Garabrandt, by refusing to correctly record the absence of the Plaintiff on June 23rd, 2016 as Workman's Compensation Leave as he should have, in an act of revenge against the Plaintiff violated BILL OF RIGHTS (F), sections 3.3, 3.4 and 14.9(a) of the contract and Workers Compensation Leave 3 group 16, caused the Plaintiff to lose 5 days of sick time accruals amounting to a $1391.60 (34.79 per straight time hour x 8 hours per day x 5 = 1391.60) in value, which caused the Plaintiff great stress and mental anguish, and which denied the Plaintiff his union rights and lawful rights.

**NYSCOPBA Sergeant's Union Representative Steve Garabrandt Threatening RCF**

**Corrections Officers and Plaintiff in Pre Shift Briefing Room**

253. Local NYSCOPBA Sergeant's union representative Steve Garabrandt had a duty to not to discriminate, interfere, restrain or coerce with or threaten other local NYSCOPBA union members from his same union or make such other union members suffer any reprisal either directly or indirectly from his position as a NYSCOPBA union representative or from his position as an RCF Supervisor.

254. Local NYSCOPBA Sergeant's union representative Steve Garabrandt is the sole Sergeant's union representative at RCF.

255. On or about September 19[th,] 2016, local NYSCOPBA union representative and RCF Sergeant Steve Garabrandt stood in front of approximately 45 RCF Correctional Officers in the pre shift briefing line up room and stated to all: "if anyone goes above my head or other Supervisor's heads that Correctional Officers will be retaliated against" and while doing so appeared to be clenching his fist and gritting his teeth.

256. RCF Correctional Officers are allowed to go to any superior Supervisor and voice their concerns or complaints if they feel their immediate Supervisor is neglecting their duty or acting wrongfully.

257. Local NYSCOPBA Sergeant's union representative Steve Garabrandt's name was not listed on the RCF charts indicating who was on duty that day, on or about September 19[th,] 2016, as it should have been.

258. Local RCF NYSCOPBA Sergeant's union representative Steve Garabrandt, by threatening approximately 45 Correctional Officers, including the Plaintiff, at the pre shift briefing in the pre shift briefing room, at RCF, on or about September 19th, 2016, caused the Plaintiff stress and mental anguish and causes suppression of rightful complaints from the RCF Corrections Officers, including complaints about the unfair distribution of overtime hours, has violated BILL OF RIGHTS section (F) and sections 3.3 and 3.4 of the contract and sections 209-a-2 (a), (b) and (c) of the Public Employees Fair Employment Act, which caused the Plaintiff stress and mental anguish, directly causes suppression of complaints about unfair distribution of overtime complaints and other complaints, is a direct factor in harboring corruption within the overtime hiring system and is a direct factor which has caused the Plaintiff to lose a substantial amount of money as described in 1 through 257 of this complaint, which denies the Plaintiff his union rights, contract rights and lawful rights.

## RCF Management's Retaliatory Acts against the Plaintiff

259. Since the Plaintiff was forced to leave on June 23rd, 2016, as a result of local NYSCOPBA union representatives James Bell's wrongful actions on that date, RCF Management had a duty, when such an emergency absence occurs, such as when the Plaintiff was working a swap for Correction Officer John Hyde on June 23rd 2016, to adhere to DOCCS directive 2223 V (F) as in all past practices with other Correctional Officers in emergency situations pursuant to BILL OF RIGHTS (F), 3.3 and 3.4 of the contract.

260. As a direct result of Sergeant Steve Garabrandt's actions on June 23rd, 2016, the Plaintiff's then shift swapping partner John Hyde was wrongfully charged 8 hours against his

vacation time accruals by RCF Management which caused union member John Hyde to be upset with the Plaintiff; in an intentional act of revenge on the Plaintiff by RCF Management.

261.    As a result of retaliatory actions by RCF Management against the Plaintiff by choosing to enforce RCFs directive 2223 section V (d) instead of using the same 2223 directive section V (f), as used in past practices in other union member emergency absences, RCF Management violated BILL OF RIGHTS (F), 3.3 and 3.4 of the contract and caused the Plaintiff to suffer great stress and mental anguish which denied the Plaintiff his union rights

262.    Plaintiff did not seek the entitled Workman's Compensation Benefits, as he was very concerned about his health and did not want to further cause stress upon himself, as he was already under tremendous stress from the various wrongful actions instigated by the Defendants as described in 1 through 261 of this claim.

263.    Plaintiff required further, fully documented, medical attention after June 3rd 2016 as a result of RCF Management's, local NYSCOPBA union representative's James Bell and union representative Sergeant Steve Garabrandt's threatening, harassing and retaliatory actions towards the Plaintiff on June 23rd, 2016, and after, as well as from other wrongful ongoing actions caused by the Defendants as described in 1 through 262 of this claim.

264.    Plaintiff is currently taking several kinds of medication, whereas before he took none, as a result of local NYSCOPBA union representatives James Bell and Steve Garabrandt's endangering, harassing and revengeful actions towards the Plaintiff on June 23rd 2016 and the wrongful actions of the Defendants as described in 1 through 263 of this claim .

**Request for Assistance from the Public Employment Safety and Health Agency**

265.    On or about June 27th 2016, the Plaintiff mailed a complaint to the Public Employment Safety and Health Agency to request assistance in stopping harassment committed by local NYSCOPBA union representative James Bell and others; they stated they could not help the Plaintiff in this matter.

**Attempts by Union Member/Correctional Officer Carl Hewko to Stop Implementation of the Overtime Proposal**

266.    RCF Correctional Officer Carl Hewko had a duty not to interfere with the implementation of the approved Over Time Labor Management Agreement as it was previously voted in by a formal facility secret ballot vote pursuant to BILL OF RIGHTS (F), section 3.3 of and 15.1(a) of the contract.

267.    Union member Carl Hewko circulated a petition (date unknown) for union members to sign, in an attempt to put the overtime issue up for a revote so as to stop the implementation of the Labor Management Agreement, stating word changes as a reason to put it up for a revote, this petition was signed by 25 union members almost all of which worked substantial amounts of overtime at RCF.

268.    The premise of the formerly VOTED IN OVERTIME PROPOSAL was the same as the Labor Management Agreement that was approved by the parties and is one in which if anyone who wishes to voluntarily work overtime and have the lowest number of accumulated overtime hours for the year get hired first for the overtime and so on.

269.    The only negative impact of the Labor Management Agreement being enacted would have been the inability for Correctional Officer Carl Hewko and certain other Correctional Officers who signed his petition to continue to steal overtime hours away from other Correctional Officers, as he was well aware of.

270.    Correctional Officer Carl Hewko has gained and is currently gaining from 500 to possibly 800 hours of overtime under the CURRENT overtime hiring system, earning from $30,000 to $50,000 more per year in income than the Plaintiff, as a direct result of the corrupt overtime hiring system Mr. Hewko wants so desperately to keep in place.

271.    Union member Carl Hewko was also one of the Correctional Officers present at the April 6th, 2016 meeting and raised his hand to vote down and stop the implementation of the Overtime Labor Management Agreement.

272.    Carl Hewkos' deliberate unjust actions of petitioning other union members in regards to stopping the implementation of the Overtime Labor Management Agreement for the sole purpose of unfairly gaining overtime hours for himself violates BILL OF RIGHTS section (F), sections 15.1(a) of the contract and caused the Plaintiff great stress and mental anguish which denies the Plaintiff his union rights.

### The Plaintiff Was Forced to Bid a Secluded Job to Stop Harassment

273.    On or about June 8th 2016, the Plaintiff, in his own best interest, was forced to attain a bid job in the recreation yard tower at RCF, in an attempt to eliminate or lessen the revenge and harassment by the Defendants and other union members, as the job in the yard tower is a secluded post away from others; Plaintiff did not want this job.

60

274.    Plaintiff lost $2006.00 per year in his payroll check, via shift differential, pursuant to section 11.7(2)(ii) of the contract, as a result of the Plaintiff being forced to bid another job as a result of Defendants' and unknown others actions.

### Further Harassment by a Union Member

275.    NYSCOPBA and local NYSCOPBA union representative James Bell had a duty not to intimidate, discriminate against, harass or cause the Plaintiff's life to be endangered or to cause the Plaintiff to suffer any reprisal, directly or indirectly, that would affect his working conditions pursuant to BILL OF RGHTS (F), 3.3, 3.4 and 22.1 of the contract and Public Employees Fair Employment Act 209-a-2 a, b and c.

276.    On or about July 4th 2016, RCF Correctional Officer Terry Rivers informed the Plaintiff that he overheard a conversation between local NYSCOPBA union representative James Bell stating to another union member, who he refused to name, that they were going to "set the Plaintiff up".

277.    Local NYSCOPBA union representative James Bell, by engaging in a conversation with another unknown Correctional Officer, and stating to that unknown officer that they were going to "set the plaintiff up" violated BILL OF RGHTS (F), 3.3, 3.4 and 22.1 of the contract and Public Employees Fair Employment Act 209-a-2 a, b and c which jeopardized the Plaintiffs life, wellbeing and working conditions and caused the Plaintiff great stress and mental anguish which denied the Plaintiff his union rights and lawful rights.

**Further Harassment against the Plaintiff**

278.    Plaintiff was falsely accused of leaving the hatch door open on the recreation yard tower on May 17th 2017 by Correctional Officer Pat Gray indicating to the Plaintiff that the statements made by NYSCOPBA representative James Bell on July 4th 2016 were being acted out.

279.    RCF Management and RCF NYSCOPBA union representatives including representative James Bell again had a duty not to harass the Plaintiff pursuant to BILL OF RIGHTS section (F), 3.3, 3.4 and 22.1 of the contract and Public Employees Fair Employment Act sections 209-a-1 a, b, c, d and e and 209-a-2 a, b, and c .

280.    Correctional Officer Pat Gray, the union member who falsely accused the Plaintiff of wrongdoing on the May 17th 2017, was present at the April 6th 2016 local union meeting where a handful of union members unjustly voted down the implementation of the previously fully approved Overtime Labor Management Agreement that the Plaintiff had introduced.

281.    Union member Pat Gray, upon allegedly discovering the yard tower hatch was open, immediately reported the alleged wrongdoing of the Plaintiff directly to acting Captain McCabe (Management) at approximately 8:40 am on May 17th 2017, via 2 way radio, when if he had followed the chain of command as required, he should have first reported it to Sergeant Patnode, his immediate Supervisor.

282.    On May 17th 2017, when Plaintiff was falsely accused of leaving the yard tower hatch door open on the yard tower, the Plaintiff received a call from Sergeant Patnode at his home in Canada, at approximately 9:45 am, over one hour after union member Pat Gray reported the alleged incident to acting Captain McCabe (Management) over the two way radio, at which

time the Plaintiff inquired from Sergeant Patnode if any RCF Management was aware of the alleged incident and Sergeant Patnode replied "no", when in fact they were aware and as Sergeant Patnode was very much aware that it was reported to Management which indicated deception and further indicated and supported harassment towards the Plaintiff once again.

283.    Correctional Officer Pat Gray, by falsely reporting to Acting Captain Tom McCabe (Management) that the yard tower hatch door was open and Sargent Tom Patnode lying to the Plaintiff about who was aware of the incident, all of which fully supported further harassment towards the Plaintiff violated BILL OF RIGHTS section (F) and sections 3.3, 3.4 and 22.1 of the contract and Public Employees Fair Employment Act 209-a-1 a, b, c, d and e and 209-a-2 a, b, and c which caused the Plaintiff great stress and mental anguish and denied the Plaintiff his union rights and lawful rights.

## Plaintiff Contacted the Equal Employment Opportunity Commission to Request Their Assistance

284.    Plaintiff contacted the Equal Employment Opportunity Commission (EEOC) in 2015 and again on June 20th 2017, and a Ms. Tammy Turner informed the Plaintiff they could not help him.

## Further Conditions Indicating Corruption within RCF

285.    Upon information and belief conditions exist, along with the conditions as described in 1 through 284 of this complaint, that RCF Management is collaborating with RCF NYSCOPBA union representatives in denying RCF Correctional Officers, including the Plaintiff, their union rights and RCF Management is compensating and or rewarding local RCF NYSCOPBA union representatives for their actions or inactions in representing the Plaintiff and

other union members at RCF to the extent that can only be determined through documents delivered to the Plaintiff through Discovery and of which could deny the Plaintiff and others his union rights, contractual rights and lawful rights.

286.    The Plaintiff reserves the right to amend and/or submit a substantial supplement to this claim after Discovery.

287.    The Defendants in this complaint individually, in their official capacity and as co-conspirators conspired together, to take extreme unlawful, contract breaching, unethical and immoral actions and inactions to delay and stop the implementation of the "fully approved by all parties Labor Management Agreement", for the sole purpose of wrongful personal gain of overtime hours and self-interest as described in paragraphs 1 through 286 of this complaint.

288.    The Defendants in this complaint individually, in their official capacity and as co-conspirators, conspired together and with other unknown individuals, took extreme unlawful, contract breaching, unethical and immoral actions and inactions to harass and retaliate against the Plaintiff for exposing the corruption within the RCF overtime hiring system and for exposing the neglect of the individuals responsible for ensuring that RCF Correctional Officer overtime hours were equally distributed as described in 1 through 287 of this complaint .

289.    The immense efforts of the Defendants to stop implementation of the Overtime Labor Management Agreement only greatly supports the allegations of corruption by the Plaintiff within the RCF overtime hiring system.

290.    The Plaintiff has endured approximately 180 to 200 acts of harassment imposed on him by the Defendants and other unknown Correctional Officers as a direct result of the Defendants acts or inactions stated in paragraphs 1 through 289 of this claim.

64

291.    The Plaintiff is extremely concerned that further unlawful, contract breaching, harassment, retaliation and life endangering actions will be taken against him by the Defendants or other unknown Correctional Officers after he files this complaint.

292.    The filing of this complaint was delayed for serious health and medical reasons, as a direct result of the actions and inactions of the Defendants and unknown others as stated in paragraphs 1 through 291 of this complaint.

## CAUSES OF ACTION

## First Cause of Action - Breach of Contract (Neglect to Ensure Equal Overtime Distribution) All Defendants Except Carl Hewko, Tom Patnode and Patrick Gray

293.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 292 as though fully set forth herein.

294.    New York State entered into a contract agreement with The New York State Correctional Officers and Police Benevolent Association, Inc. from April 1st, 2009, to March 31st, 2016, and of which such contract is still in effect until a successor agreement is made pursuant to 29 USC 158-7 (b).

295.    The Defendants, individually and in their official capacity, had a duty to ensure that all Correctional Officer overtime hours at RCF, including the Plaintiff's overtime hours, were equally distributed pursuant to section 15.1(a) of the contract.

296.   RCF overtime hours were not equally distributed from on or about July 19th, 2010, to the filing date of this claim.

297.   The Defendants, acting individually and in their official capacity, neglected their duty to ensure that Correctional Officer overtime hours were equally distributed at RCF which violated section 15.1(a) (equitable distribution of overtime).

298.   In light of the foregoing, Pursuant to section 15.1(a) of the contract, the Defendants, acting individually and in their official capacity, caused the Plaintiff to suffer great stress and mental anguish and caused the Plaintiff to lose a substantial amount of money both in his biweekly payroll checks and in his future retirement income as described in paragraphs 1 through 297 of this complaint.

## Second Cause of Action, Breach of Contract, Tortious Interference (All Defendants)

299.   The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 298 as though fully set forth herein.

300.   New York State entered into a contract agreement with The New York State Correctional Officers and Police Benevolent Association, Inc. from April 1st, 2009 to March 31st, 2016, and of which such contract is still in effect until a successor agreement is made pursuant to 29 USC 158-7 (d).

301.   The Defendants, individually, in their official capacity and as co-conspirators all had direct knowledge of the contract and knowledge of their duties in relation to that contract.

66

302. The Defendants individually, in their official capacity and as co-conspirators all had the intent to interfere with the contract through their actions and inactions in that they intentionally refused to ensure RCF Correctional Officer overtime hours were equally distributed (after the Plaintiff fully exposed the corruption within the overtime hiring system to all NYSCOPBA members, via newsletters): refused to negotiate a Labor Management Agreement from the VOTED IN PROPOSAL until forced to do so, refused to ensure a healthy work environment, refused to properly represent the Plaintiff, refused to stop alcoholic beverages being served at local NYSCOPBA membership meetings, refused to have local NYSCOPBA union representative elections, refused to allow access to all union members to RCF local NYSCOPBA union membership meetings, refused to process the Plaintiff's second grievance in accordance with the best interest of the Plaintiff's wellbeing, intentionally delayed the Plaintiff's Step 2 grievance decision, refused to investigate corruption as reported to DOCCS acting Commissioner Annucci, refused to not interfere with the three Overtime Labor Management Committee Meetings, refused to faithfully negotiate within the three Overtime Labor Management Committee Meetings, refused to come to agreements within the actual Overtime Committee Meetings, but instead chose to come to an agreement in private, refused to act professionally and in the best interest of the Plaintiff but instead chose to attempt to assault the Plaintiff at an Overtime Committee Meeting, refused to conduct Local NYSCOPBA meetings in the best interest of the Plaintiff and other union members by unjustly voting down and stopping the implementation of the Overtime Labor Management Agreement, refused to inform all RCF Correctional Officers of important union meeting votes, informed only those RCF Correctional Officers who work substantial amounts of overtime to attend the meeting on April 6th, 2016, where they voted to stop the implementation of the approved Overtime Labor Management

Agreement that was to take effect on January 1st of 2017, taunted the Plaintiff because the Plaintiff failed in his attempts to get the Public Employment Relations Board to act on his complaint, endangered the Plaintiff's life by attempting to get RCF inmates to turn against him and harm the Plaintiff, on June 23rd, 2016, intentionally and improperly charged the Plaintiff's absence against his sick time accruals as a result of a work place injury, on June 23rd, 2016, instead of charging it to Workman's Compensation Benefits as required by law, threatened the Plaintiff, in pre shift briefings at RCF, that if anyone goes above the Sergeants heads that the Plaintiff will be retaliated against, failed to ensure that the Plaintiff did not get harassed or retaliated against at RCF and that they failed to represent the Plaintiff.

303. As a direct result of the Defendants actions and inactions, the Defendants caused the Plaintiff great stress and mental anguish and caused the Plaintiff to lose a substantial amount of money both in his biweekly payroll checks and in his future retirement income as described in 1 through 302 of this complaint, which denied the Plaintiff his union rights, contract rights and lawful rights.

**Third Cause of Action, 42 USC 1983, Violation of the Equal Protection Clause of the 14th Amendment (all Defendants)**

304. The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 303 as though fully set forth herein.

305. The actions of the Defendants constitute actions and inactions under color of law and deprive the Plaintiff of his civil rights and liberties and constitutional rights, privileges, and immunities.

306.    The actions and inactions taken by the Defendants, acting individually and in their official capacity and as co-conspirators, were not in good faith and constitute knowing and willful denials, deprivations, and/or violations of Plaintiff's civil rights and liberties and constitutional rights, privileges, and immunities.

307.    By reason of the aforementioned, the Defendants individually, in their official capacity and as co-conspirators, directly and indirectly denied and or participated in and or authorized the denial of the Plaintiff's union rights, contractual rights and lawful rights as stated in 1 through 306 this complaint, and in doing so unconstitutionally deprived the Plaintiff of his equal protections of the law guaranteed under the fourteenth amendment to the U.S. Constitution and 42 USC 1983 and thus knowingly and willfully denied, deprived and or violated the Plaintiff's civil rights and liberties and constitutional rights privileges and immunities.

308.    In light of the foregoing, pursuant to the 14th Amendment of the U.S Constitution and 42 USC 1983, the Defendants are liable to the Plaintiff in an action at law and suit in equity for redress of the Defendants' denials, deprivations, and violations of Plaintiff's civil rights and liberties and constitutional rights, privileges, and immunities which caused the Plaintiff great stress and mental anguish and caused the Plaintiff to lose a substantial amount of money in both his biweekly payroll checks and in his future retirement income.

## Forth Cause of Action, 29 USC 530, Act by Violence or Threat of Violence

### (Defendants James Bell and Tony Harper)

309.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 308 as though fully set forth herein.

69

310.    The Defendants had a duty not to threaten use of force or violence or threat of force or violence and to not coerce, or intimidate, or attempt to restrain, coerce, or intimidate any member of a labor organization for the purpose of interfering with or preventing the exercise of their rights pursuant to 29 USC 530.

311.    The Defendants directly engaged in acts of threats and violence, in an attempted assault of the Plaintiff inside the RCF administration conference room as an act of violence against the Plaintiff and attempting to get RCF inmates to turn against and harm the Plaintiff while inside the RCF compound in extremely close proximity of convicted felons, some of whom have committed murder.

312.    In light of the foregoing, pursuant to 29 USC 530, the Defendants, James Bell and Tony Harper are liable to the Plaintiff which directly caused the Plaintiff to suffer great stress and mental anguish and indirectly caused the Plaintiff to lose a substantial amount of money in both his biweekly payroll check and in his future retirement income, which denied the Plaintiff his union rights, contract rights and lawful rights.

## Fifth Cause of Action (42 USC 1985- Conspiracy to Interfere with Civil Rights) All Defendants

313.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 312 as though fully set forth herein.

314.    The actions or inactions of the Defendants, individually and in their official capacity and as co-conspirators, constitute actions under color of law and deprive the Plaintiff of his civil rights and liberties and constitutional rights privileges and immunities.

315.    The actions taken by the Defendants were not in good faith and constitute knowing and willful denials, deprivations, and/or violations of Plaintiff's civil rights and liberties and constitutional rights, privileges, and immunities.

316.    The Defendants individually, in their official capacity and as co-conspirators, had a common goal in that they conspired to deprive the Plaintiff of his union rights, contract rights and lawful rights as described in paragraphs1 through 315 of this complaint which violated the Plaintiff's civil rights and liberties and constitutional privileges and immunities.

317.    The Defendants' actions and inactions individually, in their official capacity and as co-conspirators, took those actions and inactions in furtherance of the conspiracy so as to deprive the Plaintiff of his civil rights and liberties and constitutional rights, privileges, and immunities.

318.    The Defendants retaliated against the Plaintiff in that they intentionally refused to ensure RCF Correctional Officer overtime hours were equally distributed (after the Plaintiff fully exposed the corruption within the overtime hiring system to all NYSCOPBA members, via newsletters): refused to negotiate a Labor Management Agreement from the VOTED IN PROPOSAL until forced to do so, refused to ensure a healthy work environment, refused to properly represent the Plaintiff, refused to stop alcoholic beverages being served at local NYSCOPBA membership meetings, refused to have local NYSCOPBA union representative elections, refused to allow access to all union members to RCF local NYSCOPBA union membership meetings, refused to process the Plaintiff's second grievance in accordance with the best interest of the Plaintiff's wellbeing, intentionally delayed the Plaintiff's Step 2 grievance decision, refused to investigate corruption as reported to DOCCS acting Commissioner Annucci,

71

refused to not interfere with the three Overtime Labor Management Committee Meetings, refused to faithfully negotiate within the three Overtime Labor Management Committee Meetings, refused to come to agreements within the actual Overtime Committee Meetings, but instead chose to come to an agreement in private, refused to act professionally and in the best interest of the Plaintiff but instead chose to attempt to assault the Plaintiff at an Overtime Committee Meeting, refused to conduct Local NYSCOPBA meetings in the best interest of the Plaintiff and other union members by unjustly voting down and stopping the implementation of the Overtime Labor Management Agreement, refused to inform all RCF Correctional Officers of important union meeting votes, by informing only those RCF Correctional Officers who work substantial amounts of overtime to attend the meeting on April 6th, 2016, where they voted to stop the implementation of the approved Overtime Labor Management Agreement that was to take effect on January 1st of 2017, taunted the Plaintiff because the Plaintiff failed in his attempts to get the Public Employment Relations Board to act on his complaint, endangered the Plaintiff's life by attempting to get RCF inmates to turn against him and harm the Plaintiff, on June 23rd, 2016, by intentionally and improperly charging the Plaintiff's absence against his sick time accruals as a result of a work place injury, on June 23rd, 2016, instead of charging it to Workman's Compensation Benefits as required by law, threatened the Plaintiff, in pre shift briefings at RCF, that if anyone goes above the Sergeants heads that the Plaintiff will be retaliated against, failed to ensure that the Plaintiff did not get harassed or retaliated against at RCF and misrepresented the Plaintiff.

319.    In light of the foregoing, pursuant to 42 U.S.C. 1985, the Defendants are liable to the Plaintiff in an action at law and suit in equity for redress of the Defendants' denials, deprivations, and violations of the Plaintiff's civil rights and liberties and constitutional rights,

privileges, and immunities and caused the Plaintiff to suffer great stress and mental anguish, caused the Plaintiff to lose a substantial amount of money in both his biweekly payroll checks and in his future retirement income.

## Sixth Cause of Action, 29 USC 1985 Civil rights, Conspiracy to Retaliate against Plaintiff (All Defendants)

320. The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 319 as though fully set forth herein.

321. The actions or inactions of the Defendants, individually and in their official capacity and as co-conspirators, constitute actions under color of law and deprive the Plaintiff of his civil rights and liberties and constitutional privileges and immunities.

322. The actions taken by the Defendants were not in good faith and constitute knowing and willful denials, deprivations, and/or violations of the Plaintiff's civil rights and liberties and constitutional rights, privileges, and immunities.

323. The Defendants individually, in their official capacity and as co-conspirators, had a common goal in that they conspired to retaliate against the Plaintiff and to deprive the Plaintiff of his civil rights and liberties and constitutional privileges and immunities.

324. The Defendants' actions and inactions individually, in their official capacity and as co-conspirators, took those actions and inactions in furtherance of the conspiracy so as to deprive the Plaintiff of his civil rights and liberties and constitutional rights, privileges, and immunities.

325.   The Defendants actions and inactions violated the Plaintiffs rights and retaliated against the Plaintiff in that they:  refused to negotiate a Labor Management Agreement from the VOTED IN PROPOSAL until forced to do so, refused to ensure a healthy work environment, refused to properly represent the Plaintiff,  refused to stop alcoholic beverages being served at local NYSCOPBA membership meetings, refused to have local NYSCOPBA union representative elections, refused to allow access to all union members to RCF local NYSCOPBA union membership meetings, refused to process the Plaintiff's second grievance in accordance with the best interest of the Plaintiff's wellbeing, intentionally delayed the Plaintiff's Step 2 grievance decision,  refused to investigate corruption as reported to DOCCS acting Commissioner Annucci, refused to not interfere with the three Overtime Labor Management Committee Meetings,  refused to faithfully negotiate within the three Overtime Labor Management Committee Meetings,  refused to come to agreements within the actual Overtime Committee Meetings, but instead chose to come to an agreement in private, refused to act professionally and in the best interest of the Plaintiff  but instead chose to attempt to assault the Plaintiff at an Overtime Committee Meeting, refused to conduct Local NYSCOPBA meetings in the best interest of the Plaintiff and other union members by unjustly voting down and stopping the implementation of the Overtime Labor Management Agreement, refused to inform all RCF Correctional Officers of important union meeting votes, by informing only those RCF Correctional Officers who work substantial amounts of overtime to attend the meeting on April 6th, 2016, where they voted to stop the implementation of the approved Overtime Labor Management Agreement that was to take effect on January 1st of 2017,  taunted the Plaintiff because the Plaintiff failed in his attempts to get the Public Employment Relations Board to act on his complaint, endangered the Plaintiff's life by attempting to get RCF inmates to turn against

74

him and harm the Plaintiff, on June 23rd, 2016, by intentionally and improperly charging the Plaintiff's absence against his sick time accruals as a result of a work place injury, on June 23rd, 2016, instead of charging it to Workman's Compensation Benefits as required by law, threatened the Plaintiff, in pre shift briefings at RCF, that if anyone goes above the Sergeants heads that the Plaintiff will be retaliated against, failed to ensure that the Plaintiff did not get harassed or retaliated against at RCF and misrepresented the Plaintiff.

326.    In light of the foregoing, pursuant to 42 U.S.C. 1985, the Defendants are liable to the Plaintiff in an action at law and suit in equity for redress of the Defendants' denials, deprivations, and violations of Plaintiff's civil rights and liberties and constitutional rights, privileges, and immunities and caused the Plaintiff to suffer great stress and mental anguish and caused the Plaintiff to lose a substantial amount of money in both his biweekly payroll checks and in his future retirement income.

## Seventh Cause of Action, 29 USC 411 (a)(1), No Local NYSCOPBA Union Representative Elections

## Defendants; Mike Powers, Greg Fredricks, Jim Bleu, Terry Pike and Kevin Aldous

327.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 326 as though fully set forth herein.

328.    The Defendants had a duty to ensure that local RCF NYSCOPBA union representative elections were conducted so that all RCF NYSCOPBA union members, including the Plaintiff, can chose who they wish to represent them in employment related matters Pursuant to 29 USC411(a)(1), the contract and the NYSCOPBA constitution.

329.   The Defendants Mike Powers, Greg Fredricks, Jim Bleu, Terry Pike and Kevin Aldous have not conducted any local NYSCOPBA union representative elections from July 19th 2010, to the filing date of this complaint, so as union members, including the Plaintiff, can chose who they wish to represent them in employment related matters.

330.   In light of the foregoing, pursuant to 29 USC 411(a)(1), the contract and the NYSCOPBA constitution, the Plaintiff has suffered great stress and mental anguish, directly caused the Plaintiff to suffer the loss of substantial amounts of money in both his biweekly payroll check and in his future retirement income and caused the Plaintiff to be denied his right to vote for his union representatives.

**Eighth Cause of Action, 29 USC 411(b)(2), Deprivation of Local NYSCOPBA Union Meetings (Defendants; Mike Powers, Greg Fredricks, Jim Bleu, Terry Pike and Kevin Aldous)**

331.   The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 330 as though fully set forth herein.

332.   The Defendants had a duty to ensure that all NYSCOPBA union members, including the Plaintiff, had access to local monthly NYSCOPBA union membership meetings pursuant to 29 USC 411(b)(2), the contract and the NYSCOPBA Constitution, so as they may voice their opinion, vote and benefit from the democratic voting results from all RCF union members.

333.   The Defendants Mike Powers, Greg Fredricks, Jim Bleu, Terry Pike and Kevin Aldous have not conducted any local NYSCOPBA union membership meetings that are assessable to all RCF NYSCOPBA members, from on or about July 19th 2010, when the Plaintiff arrived at RCF for employment, to the filing date of this claim, as they conduct only one meeting

per month at 3:30 pm that is totally inaccessible to the 3:00 pm to 11:00 pm shift and inconveniently accessible to the 11:00 pm to 7:00 am shift.

334. In light of the foregoing, pursuant to, 29 USC 411(b)(2) , the contract and the NYSCOPBA Constitution, the Defendants are liable to the Plaintiff in that they caused the Plaintiff to suffer great stress and mental anguish, directly caused the Plaintiff to suffer the loss of a substantial amount of money both in his biweekly payroll checks and in his future retirement income, directly caused the Plaintiff to be denied his right to attend monthly local NYSCOPBA union membership meetings and denied the Plaintiff the benefits from democratic voting results from those meetings, in particular the meeting that took place on April 6th, 2016, in which a small group of Correctional Officers stopped the implementation of the previously "fully approved and voted in Overtime labor Management Agreement" .

**Ninth Cause of Action 29 USC 431(b)(2) Alcoholic Beverages at NYSCOPBA Membership Meetings (Defendants; Mike Powers, Greg Fredricks, Jim Bleu, Terry Pike and Kevin Aldous)**

335. The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 334 as though fully set forth herein.

336. The Defendants have a duty to not interfere with or inhibit local RCF NYSCOPBA union membership meetings pursuant to 3.4 of the contract.

337. The Defendants interfered with and inhibited the local RCF NYSCOPBA union membership meetings by conducting such meetings in a bar room and allowing the NYSCOPBA union representatives and union members to consume alcohol before and during such union meetings.

77

338.    The Defendant James Bell insulted, harassed and degraded the Plaintiff at a Local NYSCOPBA union meetings while in an intoxicated state and he and all other local NYSCOPBA union representatives who are Defendants in this action have denied the Plaintiff and others productive uninhibited union meetings so that all 250 union members best interest, including the Plaintiffs best interest, can be represented.

339.    In light of the foregoing pursuant to 29 USC 431(b)(2), local NYSCOPBA union representative James Bell and all other NYSCOPBA union representatives who are Defendants in this complaint, have caused the Plaintiff great stress and mental anguish, caused the Plaintiff to lose a substantial amount of money in both his biweekly payroll checks and in his future retirement income which violated the Plaintiffs union rights, contract rights and lawful rights.

## Tenth Cause of Action 42 USC 12203 Prohibition Against Retaliation and Coercion (All Defendants)

340.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 339 as though fully set forth herein.

341.    The Defendants had a duty not to discriminate, coerce, intimidate, threaten or interfere with the Plaintiff in the exercise of his rights because he rightfully criticized RCF management and RCF NYSCOPBA union representatives pursuant to 42 USC 12203 and the contract .

342.    The Plaintiff initially and rightfully criticized, pursuant to National labor Relations Act subsection 8 (c), RCF managements and RCF NYSCOPBA union representatives for neglecting to ensure that RCF Correctional Officer overtime hours were equally distributed.

343.    The Defendants violated the Plaintiffs rights in that they intentionally refused to ensure RCF Correctional Officer overtime hours were equally distributed (after the Plaintiff fully exposed the corruption within the overtime hiring system to all NYSCOPBA members, via newsletters): refused to negotiate a Labor Management Agreement from the VOTED IN PROPOSAL until forced to do so, refused to ensure a healthy work environment, refused to properly represent the Plaintiff, refused to stop alcoholic beverages being served at local NYSCOPBA membership meetings, refused to have local NYSCOPBA union representative elections, refused to allow access to all union members to RCF local NYSCOPBA union membership meetings, refused to process the Plaintiff's second grievance in accordance with the best interest of the Plaintiff's wellbeing, intentionally delayed the Plaintiff's Step 2 grievance decision, refused to investigate corruption as reported to DOCCS acting Commissioner Annucci, refused to not interfere with the three Overtime Labor Management Committee Meetings, refused to faithfully negotiate within the three Overtime Labor Management Committee Meetings, refused to come to agreements within the actual Overtime Committee Meetings, but instead chose to come to an agreement in private, refused to act professionally and in the best interest of the Plaintiff but instead chose to attempt to assault the Plaintiff at an Overtime Committee Meeting, refused to conduct Local NYSCOPBA meetings in the best interest of the Plaintiff and other union members, by unjustly voting down and stopping the implementation of the Overtime Labor Management Agreement, refused to inform all RCF Correctional Officers of important union meeting votes, informed only those RCF Correctional Officers who work substantial amounts of overtime to attend the meeting on April 6th, 2016, where they voted to stop the implementation of the approved Overtime Labor Management Agreement that was to take effect on January 1st of 2017, taunted the Plaintiff because the Plaintiff failed in his

79

attempts to get the Public Employment Relations Board to act on his complaint, endangered the Plaintiff's life by attempting to get RCF inmates to turn against him and harm the Plaintiff, on June 23rd, 2016, by intentionally and improperly charging the Plaintiff's absence against his sick time accruals as a result of a work place injury, on June 23rd, 2016, instead of charging it to Workman's Compensation Benefits as required by law, threatened the Plaintiff, in pre shift briefings at RCF, that if anyone goes above the Sergeants heads that the Plaintiff will be retaliated against, failed to ensure that the Plaintiff did not get harassed or retaliated against at RCF and misrepresented the Plaintiff.

344.    In light of the foregoing, pursuant to 42 USC 12203, the Defendants are liable to the Plaintiff in that they caused the Plaintiff great stress and mental Anguish and caused the Plaintiff to lose a substantial amount of money both in his biweekly payroll check and in his future retirement income which denied the Plaintiff his union rights, contract rights and lawful rights.

**Eleventh Cause of Action, New York State Civil Service law Article 14 Public Employees Fair Employment Act (All Defendants except Patrick Gray, Carl Hewko, Tom Patnode and Scott Clary**

345.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 344 as though fully set forth herein.

346.    The Defendants had a duty to follow all State Laws and Contract Provisions according to the New York State Article 14, Public Employees Fair Employment Act and the contract entered into between the State of New York and The New York State Correctional Officers and Police Benevolent Association.

347.    The Defendants intentionally refused to adhere to the Public Employees Fair Employment Act as they deliberately interfered with, restrained from and coerced the Plaintiff in the exercise of his rights or caused a public employer to do so.

348.    The Defendants intentionally dominated and interfered with the administration of the Plaintiffs labor union with the goal of depriving the Plaintiff of his contract and union rights.

349.    The Defendants intentionally discriminated against the Plaintiff in an attempt to discourage the Plaintiff's participation in and the exercising of his rights in his labor union.

350.    The Defendants intentionally refused to negotiate in good faith with each other and with the defendant.

351.    The Defendants refused to continue all terms of the expired agreement as entered into by the State of New York and the New York State Correctional Officers and Police Benevolent Association.

352.    The NYSCOPBA representative Defendants intentionally breached their duty to fairly represent the Plaintiff in the exercise of his rights.

353.    As a direct result of the Defendants' intentional actions and inactions, pursuant to the Public Employees Fair Employment Act Plaintiff suffered great stress and mental anguish and suffered the loss of a substantial amount of money in both his biweekly payroll checks and in his future retirement income and denied the Plaintiff his union rights, contract rights and lawful rights.

## Twelfth Cause of Action, 42 USC 1983 – Deprivation of Constitutional Rights (All Defendants)

354.    The Plaintiff repeats and realleges each and every allegation in paragraphs 1 through 353 as though fully set forth herein.

355.    The actions or inactions of the Defendants, individually and in their official capacity and as co-conspirators, constitute actions under color of law and deprive the Plaintiff of his civil rights and liberties and constitutional privileges and immunities.

356.    The actions taken by the Defendants were not in good faith and constitute knowing and willful denials, deprivations, and/or violations of the Plaintiff's civil rights and liberties and constitutional rights, privileges, and immunities.

357.    The Defendants' actions and inactions individually, in their official capacity and as co-conspirators, took those actions so as to deprive the Plaintiff of his civil rights and liberties and constitutional rights, privileges, and immunities.

358.    By their actions as described herein, the Defendants individually, in their official capacity and as co-conspirators subjected Plaintiff to the deprivation of rights, privileges, or immunities secured by the U.S. Constitution and deprived his union rights, contract rights and lawful rights in that they  intentionally refused to ensure RCF Correctional Officer overtime hours were equally distributed (after the Plaintiff fully exposed the corruption within the overtime hiring system to all NYSCOPBA members, via newsletters): refused to negotiate a Labor Management Agreement from the VOTED IN PROPOSAL until forced to do so, refused to ensure a healthy work environment,  refused to properly represent the Plaintiff,  refused to stop alcoholic beverages being served at local NYSCOPBA membership meetings, refused to

82

have local NYSCOPBA union representative elections, refused to allow access to all union members to RCF local NYSCOPBA union membership meetings, refused to process the Plaintiff's second grievance in accordance with the best interest of the Plaintiff's wellbeing, intentionally delayed the Plaintiff's Step 2 grievance decision, refused to investigate corruption as reported to DOCCS acting Commissioner Annucci, refused to not interfere with the three Overtime Labor Management Committee Meetings, refused to faithfully negotiate within the three Overtime Labor Management Committee Meetings, refused to come to agreements within the actual Overtime Committee Meetings, but instead chose to come to an agreement in private, refused to act professionally and in the best interest of the Plaintiff but instead chose to attempt to assault the Plaintiff at an Overtime Committee Meeting, refused to conduct Local NYSCOPBA meetings in the best interest of the Plaintiff and other union members by unjustly voting down and stopping the implementation of the Overtime Labor Management Agreement, refused to inform all RCF Correctional Officers of important union meeting votes, informed only those RCF Correctional Officers who work substantial amounts of overtime to attend the meeting on April 6th, 2016, where they voted to stop the implementation of the approved Overtime Labor Management Agreement that was to take effect on January 1st of 2017, taunted the Plaintiff because the Plaintiff failed in his attempts to get the Public Employment Relations Board to act on his complaint, endangered the Plaintiff's life by attempting to get RCF inmates to turn against him and harm the Plaintiff, on June 23rd, 2016, intentionally and improperly charged the Plaintiff's absence against his sick time accruals as a result of a work place injury, on June 23rd, 2016, instead of charging it to Workman's Compensation Benefits as required by law, threatened the Plaintiff, in pre shift briefings at RCF, that if anyone goes above the Sergeants heads that the Plaintiff will be retaliated against, failed to ensure that the Plaintiff did

83

not get harassed or retaliated against at RCF, failed to properly represent the Plaintiff and engaged in a constant uninterrupted acts of deprivation and of retaliation for exposing the corruption within the RCF correctional Officer overtime hiring system.

359. As a direct result of the actions described above and throughout this complaint, Plaintiff sustained actual damages, including pain, severe and grievous mental and emotional suffering, humiliation, shame, embarrassment, worry, fear, anguish, shock, nervousness, and anxiety in an amount to be ascertained through documents in Plaintiffs possession and according to proof at trial.

360. The actions of Defendants, as described above, were malicious, deliberate, intentional, and embarked upon with the knowledge of, or in conscious disregard of, the harm that would be inflicted upon the Plaintiff. As a result of said neglect and intentional conduct, Plaintiff is entitled to punitive damages in an amount sufficient to punish Defendants and to deter others from like conduct.

361. In all of this, Defendants, and each of them, have, acting under the color of state law individually, in their official capacity and as co-conspirators , deprived the Plaintiff of rights, privileges, or immunities secured to him by the Constitution and laws of the United States in violation of 42 USC1983.

## RELIEF SOUGHT

362. Wherefore, Plaintiff requests that the court grant the following Injunctive Relief and Relief:

363. A judgement or order of the court for Injunctive Relief: implementing and enforcing the Labor Management Agreement, as previously approved by all parties to take effect

on January 1st of the year after either an agreement is reached between the Plaintiff and the Defendants, or as a result of a favorable determination or decision by a jury or the court in favor of the Plaintiff in relation to this complaint, with the two additional inclusions: stating that 1) all Correctional Officers/NYSCOPBA union members at RCF, including the Plaintiff, are allowed to view, at any time, the overtime roster containing all of the total accumulated hours for all Correctional Officers at RCF with 2) a renewable date to begin on January 1st of each year thereafter.

364.    A judgement or order of the court for Injunctive Relief: implementing and enforcing that RCF Correctional Officer overtime jobs be assigned only after pre shift briefing is complete and assigned based on seniority, as is currently done with miscellaneous job assignments and pursuant to section 24.3 of the contract.

365.    A judgement or order of the court for Injunctive Relief: enforcing that NYSCOPBA conduct regular local NYSCOPBA union representative elections at RCF pursuant to 29 USC 411(a) (1).

366.    A judgement or order of the court for Injunctive Relief: pursuant to 29 USC 411(b)(2), enforcing that local RCF NYSCOPBA union representatives make local union membership meetings accessible to ALL RCF Correctional Officers, for ALL shifts.

367.    A judgement or order of the court for Injunctive Relief: pursuant to 3.4 of the contract and 29 USC 431(b)(2), that no alcohol will be served or consumed before or during NYSCOPBA membership meetings.

368.    Five days lost of sick time accruals.    $1391.60

369.    Inconvenience pay for being forced to bid another job.    $2,006.00/per year

370.    Loss of biweekly overtime income in payroll checks.    $196,000.00

371.    Loss of future retirement income earnings    $413,000.00

Compensatory Damages =    $612,397.60

372.    Punitive Damages for pain, suffering, stress and mental anguish.

373.    And such other, further, and different relief as this Court may deem just and proper.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: _8-24-2017_

_Randy Bell_

Plaintiff's signature

86